S93A0102. WHITE v. THE STATE.
(428 SE2d 789)

HUNSTEIN, Justice.

Charles Thomas White III was convicted of the murder of Randal Beck. He appeals from the denial of his motion for a new trial.[1]

---

[1] The homicide occurred on or about January 23, 1992. White was indicted on February 4, 1992 in Gwinnett County. He was found guilty on June 12, 1992, and his sentence was filed

1. Appellant challenges the sufficiency of the evidence, asserting the State failed to prove the corpus delicti beyond a reasonable doubt. Evidence was adduced that since January 22, 1992, Randal Beck has not contacted or been seen by his close-knit family, has made no financial transactions on any of his accounts, and has not worked at the bakery business he owned. On January 23, 1992, when Beck uncharacteristically failed to appear at work, concerned family members and a worker at the bakery went to the condominium Beck co-owned with his father. Shortly thereafter, appellant drove up in Beck's car with Beck's dog. Beck's wallet was subsequently found in the trunk of the car. Appellant told Beck's family that he had not seen Beck since the prior evening, when Beck asked him to leave the condo temporarily to give Beck some privacy; that when appellant returned at 2:00 a.m. Beck's car was gone, but it had reappeared when appellant returned several hours later, at which time appellant used a key under the mat to let himself into the condo; and that appellant had been driving around since 9:00 a.m. in Beck's car. Beck's father allowed appellant to retrieve personal belongings from the condo but refused to allow appellant to stay there.

In response to statements appellant and his father gave police later that day, police examined Beck's condo and found blood stains in several rooms, but primarily in the living room and centered on the sofa, in which there were several deep gashes. There were no signs of struggle or severe blood loss in the kitchen, and three professional-grade knives, which Beck was known always to have washed by hand, were found in the dishwasher. There was evidence that extensive effort had been made to clean the blood stains in the condo. Nevertheless, based on the extent to which blood had diffused into the foam of the living room sofa and had been wicked up by carpeting, expert testimony was adduced that a human being with Beck's blood group had been significantly injured in the condo and that absent immediate treatment to stop the bleeding, death would result. The jury was authorized to find that Beck had received no treatment from medical professionals in the vicinity and that extensive efforts to locate Beck or his body had been unsuccessful.

The State also adduced the testimony of Britt Roseberry that around 2:30 a.m. on January 23, 1992, appellant came to the Waffle House where Roseberry was employed and told Roseberry that he had just slit the throat of a man, claiming later in the conversation that the man had made a homosexual advance, that they then fought in the kitchen of the man's apartment, and that appellant had stabbed

June 15, 1992. His July 6, 1992 motion for new trial was denied on September 4, 1992. A notice of appeal was filed on September 30, 1992, and the appeal was docketed on October 21, 1992. Oral arguments were heard on January 19, 1993.

the man in self-defense. A friend of appellant's testified that at approximately 4:00 a.m., appellant came to his apartment and claimed to have killed a man. Appellant's father testified that in the late afternoon of January 23, 1992, appellant told him he had cut Beck across the neck and that Beck was dead.

Appellant testified at trial that he assumed, but did not know for certain, that Beck was dead as a result of injuries he inflicted on Beck in self-defense after he awoke from a drug-induced slumber to find Beck sexually assaulting him. Under appellant's version of the events, on the evening of January 22, 1992, he was staying at Beck's condo and discussing the possibility of working at Beck's bakery, when Beck served him fruit drinks laced with alcohol without appellant's knowledge and drugged appellant by giving him several pills, which Beck had represented would help him sleep, but one of which has side effects including hallucinations and disorientation. Appellant awoke during Beck's assault, shoved the man away, and tried to leave the condo, but a fight ensued, during which Beck cut appellant's finger with a knife Beck had grabbed in the kitchen. Appellant testified that in wresting the knife from Beck, the man moved into the knife and was cut in the neck. Despite this wound, Beck continued to fight until appellant ended the struggle by kicking Beck in the head, a blow which left Beck motionless on the floor with his eyes open. In the following hours, appellant left the condo three times: the first, to talk to his friend and shower at his friend's apartment; the second, to a local restaurant for some tea; and the third time to the Waffle House where he discussed his situation with Roseberry. In between these trips appellant testified he returned to the condo and tried to clean up the blood stains, shifting Beck's still inanimate body out of the way in order to facilitate the cleaning process. Around dawn, he put Beck into the victim's vehicle, noticing that Beck had grown "a little more stiffer," and drove off at 9:30 a.m. seeking a minister he knew. When unable to make contact with the minister, appellant drove up Georgia Highway 400, pulled off the road, and left Beck, naked and still displaying no sign of life, in the woods.

> To prove the corpus delicti in a charge of murder, it is essential to establish that the person alleged to have been killed is actually dead, and that death was caused or accomplished by violence or other direct criminal agency of another human being . . . and that the accused caused the death in the manner charged. [Cit.]

*Grimes v. State*, 204 Ga. 854, 858 (1) (51 SE2d 797) (1949).

It is of course true that the burden was upon the State to

prove the corpus delicti, and to show also that the defendant was the perpetrator of the alleged offense. Both of these elements, however, could be shown by circumstantial as well as direct evidence. [Cits.]

*Jester v. State*, 193 Ga. 202, 208 (1) (17 SE2d 736) (1941). Accord *Flynn v. State*, 255 Ga. 415, 417-418 (5) (339 SE2d 259) (1986). Convictions founded on circumstantial evidence are authorized when "the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6; *Murdix v. State*, 250 Ga. 272, 274 (297 SE2d 265) (1982).

However, circumstantial evidence must exclude only reasonable inferences and hypotheses and it is not necessary that such evidence be devoid of *every* inference or hypothesis except that of the defendant's guilt. The question of whether there was a reasonable hypothesis favorable to the accused is a question for the jury. If [a] jury is authorized to find that the evidence, circumstantial though it may be, is sufficient to exclude every reasonable hypothesis save that of guilt, the verdict of the jury will not be disturbed by the appellate court unless the verdict is insupportable as a matter of law.

(Citations and punctuation omitted.) *White v. State*, 253 Ga. 106, 107 (317 SE2d 196) (1984).

Viewing the evidence in the light most favorable to the verdict, we find that the jury reasonably could have found the evidence excluded every other hypothesis save the guilt of the accused, OCGA § 24-4-6, and found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *White*, supra at 108 (1).

2. Evidence was adduced that conflicted with appellant's self-defense claim, including the physical evidence of the struggle at the condo (which controverted appellant's statement that the fight centered in the kitchen), the presence of three knives in the dishwasher, appellant's attempt following the struggle to remove all signs of the fight, and appellant's subsequent behavior regarding the disposal of Beck's body. Accordingly, we find no error in the trial court's denial of appellant's motion for a directed verdict on his claim of self-defense. OCGA § 17-9-1 (a); see generally *White*, supra.

3. We have reviewed appellant's contentions regarding the denial of his motions for change of venue and a gag order and find no grounds for reversal.

4. The record on voir dire reveals that neither juror appellant

now asserts should have been struck for cause held an opinion "so fixed and definite that the juror [would] be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. [Cits.]" *Johnson v. State*, 262 Ga. 652 (2) (424 SE2d 271) (1993). Both *Lively v. State*, 262 Ga. 510 (1) (421 SE2d 528) (1992), cited by appellant, and *Walker v. State*, 262 Ga. 694 (2) (424 SE2d 782) (1993) are factually distinguishable, as the jurors challenged in the case at bar had no potential to serve as a witness in the trial and had no relationship at all with the victim, the victim's family, the trial judge, the prosecution, or law enforcement officers.

5. Considering both the transcript of the hearing on appellant's motion to suppress and the trial transcript, see generally *Sanders v. State*, 235 Ga. 425 (2) (219 SE2d 768) (1975), we find no error in the trial court's denial of appellant's motion. There was ample evidence, in the form of appellant's father's testimony that appellant lived with his parents, to controvert appellant's assertion that he was more than a mere overnight guest at Beck's condo and hence to support the trial court's finding that appellant lacked standing to challenge the police's warrantless search of Beck's condo. Accord *Neely v. State*, 159 Ga. App. 737 (1) (285 SE2d 190) (1981).

6. Appellant contends the trial court erred by admitting testimony regarding Beck's blood group. An employee of the American Red Cross ("ARC") testified that ARC's records showed Beck had donated blood in 1981 and that Beck had O positive blood. Contrary to appellant's contention, the testing conducted in 1981 by ARC was not the type of investigation-generated written scientific report subject to the discovery provision of OCGA § 17-7-211. See *State v. Mulkey*, 252 Ga. 201 (2) (312 SE2d 601) (1984). Further, we find no error in the trial court's determination that the entry in ARC's records of Beck's blood group did not involve an opinion or diagnosis. Compare *Martin v. Baldwin*, 215 Ga. 293 (2) (c) (110 SE2d 344) (1959). The testimony of ARC's employee demonstrated that blood grouping is determined by machine testing and thus the matter constituted objective factual data maintained in the regular course of ARC's business which, accordingly, was admissible as a business record under OCGA § 24-3-14. See *Oldham v. State*, 205 Ga. App. 268 (1) (422 SE2d 38) (1992) (blood alcohol concentration). Accord *State v. Brierly*, 509 P2d 203 (VII) (Ariz. 1973) (accused's blood group as shown by employment medical records maintained by hospital properly admitted); *Dockery v. State*, 114 S2d 394, 399-400 (Ala. 1959) (blood group of victim as reflected in military discharge papers properly admitted).

7. The transcript fails to support appellant's claim that the State did not present into evidence the facts necessary to support the hypo-

thetical question posed to the medical examiner. We find that it was within the medical examiner's expertise to testify, based upon his observation of the blood stains at Beck's condo and the significance of the blood loss indicated by those stains, that in the absence of immediate medical care Beck was probably dead. Accordingly, the trial court did not err by admitting this opinion testimony. OCGA § 24-9-67; see generally *State v. Butler*, 256 Ga. 448 (2) (349 SE2d 684) (1986).

8. Given the overwhelming circumstantial evidence that Beck is dead, we find no reversible error in the trial court's admission of testimony by Beck's father that he believed Beck to be dead.

9. Appellant's request to charge no. 9 was not adjusted to the facts of the case and therefore was properly refused by the trial court. See generally *Harper v. State*, 249 Ga. 46 (3) (287 SE2d 211) (1982). Similarly, because there was no evidence that appellant did not have sufficient mental capacity to distinguish between right and wrong at the time of the act constituting the crime so as to support a charge on OCGA § 16-3-4 (involuntary intoxication), there was no error in the trial court's refusal to give that requested charge. See generally *Hayes v. State*, 261 Ga. 439, 443 (6) (a) (405 SE2d 660) (1991).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 3, 1993.

*David L. Whitman,* for appellant.

*Daniel J. Porter, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Staff Attorney,* for appellee.