## S09A1088. MERRITT v. THE STATE.

(683 SE2d 855)

THOMPSON, Justice.

Defendant Carolyn Merritt appeals from the denial of her motion for new trial following her convictions for the murder of Jimmy Merritt and other related crimes.[1] After review of the record, we affirm in part and reverse in part.

1. Viewed in the light most favorable to the verdict, the jury was authorized to find that Merritt shot the victim in the back of the head while he was sitting in his recliner in his home. Merritt and the victim had been married for more than 20 years of what had been a tumultuous relationship. Once, when the victim drank heavily and beat Merritt, she retaliated by shooting him in the arm. They reconciled but slept in separate bedrooms; Merritt even kept her bedroom door locked when she left the house. Merritt often made threats that she would shoot the victim again if he "messed with her."

On April 27, 2005, the victim stayed at home while Merritt went to the bank to obtain financing for a new car the victim was planning to purchase. The victim believed they would qualify for a loan when in fact, Merritt was in Chapter 13 bankruptcy and was delinquent in paying loans secured by land the victim gave her. The victim did not know his bank account contained less than $15 because Merritt routinely and deliberately hid the details of their finances from him. When the bank refused the loan, Merritt was faced with having to reveal the truth about their finances to the victim.

Merritt testified she left the bank at 10:30 a.m., picked up a co-worker, Debra Alexander, and drove back to the house where she discovered the victim and called 911. Debra indeed confirmed she was picked up at 10:30 a.m.; but several bank employees testified Merritt actually left the bank around 9:45 a.m., and test drives showed it should have taken Merritt only eight minutes to get back to the house, unaccounting for a time frame of about 30 minutes.

Merritt's son, Calvin, who lived only 100 yards away, testified

---

[1] The crimes occurred on April 27, 2005. Merritt was indicted by a Ben Hill grand jury on September 19, 2005, and charged with malice murder, felony murder, aggravated assault, possession of a firearm during the commission of a crime, and tampering with evidence. Trial by jury commenced on September 14, 2006, and the jury returned its verdict on September 29, 2006, finding Merritt guilty of all charges. The court sentenced Merritt to life in prison for malice murder, a five-year consecutive term of imprisonment for the possession charge, and a five-year concurrent term for the tampering charge. The felony murder count was vacated by operation of law and the aggravated assault count was merged for purposes of sentencing. See *Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993). Merritt filed a motion for new trial on October 23, 2006, which was denied on April 24, 2008, after a hearing. A notice of appeal was filed on May 2, 2008. The appeal was docketed in this Court on March 24, 2009, and submitted for decision on the briefs.

that he saw his mother rush into the house alone on the morning of the crimes; and that some 25-30 minutes later, Debra came to tell him to come to the house. Calvin testified that upon rushing to his father's side, his father whispered Merritt's name before losing consciousness. When police arrived, Merritt directed them to the victim's dresser where the couple kept their guns. One of the guns, owned by Merritt, was a .22 Jennings pistol that had recently been shot; tests showed the Jennings was likely the type of gun used to shoot the victim.

The victim was found in a reclining position although evidence showed the victim was shot upright. A pillow with a bullet hole in it had been placed behind the victim's head after the shooting.[2] The victim died two weeks later in the hospital from delayed complications from the gunshot wound. Merritt told police that $300 was missing, but this could not be confirmed. There were no signs of a break-in or theft and there was no evidence of outside intruders. The only people in the house that day with the victim were Merritt and Calvin. Merritt was the beneficiary of all three of the victim's life insurance policies.

Because the evidence presented by the State was entirely circumstantial, such evidence must be so strong as to exclude every other reasonable hypothesis save that of the guilt of the accused. OCGA § 24-4-6. But it need not exclude every *conceivable* inference or hypothesis — only those that are reasonable. *Smith v. State*, 257 Ga. 381 (359 SE2d 662) (1987); *White v. State*, 253 Ga. 106, 107 (1) (317 SE2d 196) (1984). Whether every reasonable hypothesis except that of the guilt of the defendant has been excluded is a question for the jury. *Lindsey v. State*, 271 Ga. 657, 658 (1) (522 SE2d 459) (1999); *White v. State*, 263 Ga. 94, 97 (1) (428 SE2d 789) (1993). Where the jury determines the evidence excluded every reasonable hypothesis save that of guilt, such a finding will be not be disturbed unless the verdict of guilty is insupportable as a matter of law. *Berryhill v. State*, 285 Ga. 198, 199 (1) (674 SE2d 920) (2009); *Bryant v. State*, 282 Ga. 631, 634 (2) (651 SE2d 718) (2007).

Here, there was no evidence of a robbery or of an outside intruder save that of Merritt's claim that $300 had been stolen, a claim the jury apparently found incredible. The one other person who had been in the house that day, Calvin, was vouched for by two witnesses, including Merritt herself. There was no evidence linking Calvin to the murder. Merritt, on the other hand, could not account for at least 30 minutes of her whereabouts that morning, and her

---

[2] Detective Hogan testified that ordinarily a perpetrator would not take the time to replace the pillow if he or she was robbing the house.

own gun, the gun that matched the type used to kill the victim, had recently been shot. Based on this evidence, along with Merritt's history with the victim, her threats, the desperate position she found herself in once she could no longer hide her entanglement in the victim's finances, and the fact that Merritt stood to gain from the victim's death as the beneficiary of his life insurance policies, a jury could have concluded beyond a reasonable doubt that Merritt shot the victim with intent to kill him. In view of the foregoing, we conclude the evidence was sufficient to authorize the jury to find Merritt guilty of malice murder beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Merritt next contends there was insufficient evidence to support her conviction for the charge of tampering with evidence. We agree. Assuming that Merritt moved the body and the pillow, OCGA § 16-10-94 (a) clearly states that intent is a necessary element of the crime:

> A person commits the offense of tampering with evidence when, with the intent to prevent the apprehension or cause the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, he knowingly destroys, alters, conceals, or disguises physical evidence or makes, devises, prepares, or plants false evidence.

Under the facts of this case, the mere repositioning of the victim or moving of the pillow does not, in and of itself, give rise to an inference that the perpetrator intended to frustrate his or her own apprehension or to obstruct the prosecution. Indeed, in this case the moving of the body and pillow did nothing more than to point the investigation toward the likelihood that the perpetrator knew the victim and that robbery was not the motive. There is no evidence as to why the body and pillow were moved and the State offers no reasonable explanation in this regard. Thus, we conclude there was insufficient evidence of intent to tamper with evidence by repositioning the body and moving the pillow. Compare *Phillips v. State*, 242 Ga. App. 404 (530 SE2d 1) (2000) (evidence sufficient to support tampering with evidence charge where plastic bag with cocaine residue was placed in garbage disposal). Because no rational trier of fact could have found Merritt guilty of tampering with evidence beyond a reasonable doubt, we reverse her conviction for that crime.

3. Merritt argues the trial court erred by admitting evidence of her bankruptcy filing because it was irrelevant and improperly injected Merritt's character into issue. "While it is true the State need not prove motive in a murder trial, evidence of motive is always relevant to establishing such a charge." *Young v. State*, 281 Ga. 750,

752 (642 SE2d 806) (2007). Merritt took significant measures to hide her financial status from the victim and the bankruptcy documents established her motive for shooting the victim. The fact that the bankruptcy documents may have incidentally reflected on defendant's character does not render the evidence inadmissible. See *Johnson v. State*, 260 Ga. 457, 458 (2) (396 SE2d 888) (1990).

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunstein, C. J., who concurs specially.*

HUNSTEIN, Chief Justice, concurring specially.

While I concur fully in Divisions 1 and 2 and agree with the majority that Merritt's bankruptcy was admissible evidence of motive, I write specially to note that

[f]iling of a bankruptcy petition is no more misconduct than the filing of a suit for breach of contract or an adoption petition, unless filed fraudulently. Even though bankruptcy imparts certain social stigma, it is not evidence of bad character.

*Tennessee v. Chestnut*, 643 SW2d 343, 348 (Tenn. Crim. App. 1982). Accordingly, I would find that evidence of Merritt's bankruptcy did not even incidentally put her character in issue.

DECIDED SEPTEMBER 28, 2009.

*Timothy L. Eidson, Steven W. Czarnota, Clinton L. Lott IV*, for appellant.

*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.