S10A0313. WHITEHEAD v. THE STATE.
(695 SE2d 255)

NAHMIAS, Justice.

Kevon Whitehead and Raldane Gordon were jointly indicted for various crimes, including malice murder, relating to the shooting death of Horace Napier.[1] Whitehead went to trial and was found guilty on all counts. On appeal, he contends that this Court should abandon its unusual rule that a defendant who objects and obtains a ruling on the admissibility of similar transaction evidence at a hearing held pursuant to Uniform Superior Court Rule (USCR) 31.3 (B) waives appeal of the issue unless he repeats the same objection when the evidence is offered at trial. Whitehead also contends that the trial court erred in admitting evidence of a similar transaction at his trial. We agree that our rule regarding objection to similar transaction evidence should conform to our rule for objecting to other types of evidence, but we conclude that the trial court did not abuse its discretion in admitting the evidence at issue. We therefore affirm.

1. Construed in the light most favorable to the verdict, the evidence shows that Oral Anderson, who was a close friend of

---

[1] The crimes occurred in DeKalb County on November 5, 2007. Whitehead was indicted on October 6, 2008, for malice murder, felony murder (two counts), aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon (two counts). On November 18, 2008, a jury found Whitehead guilty on all counts. He received a life sentence for malice murder plus a total of ten consecutive years in prison for the firearm offenses. The felony murder convictions were vacated as a matter of law, and the trial court merged the aggravated assault conviction with the malice murder conviction. On December 16, 2008, Whitehead filed a motion for new trial, which he amended on August 21, 2009. On September 9, 2009, the trial court denied the amended new trial motion. The case was docketed in this Court for the January 2010 Term and orally argued on February 15, 2010.

Napier's, owned a clothing store in DeKalb County with a studio in the back for recording Jamaican music. On November 5, 2007, Anderson was in the recording studio when he saw Whitehead and Gordon arrive. Whitehead and Gordon were there to sell marijuana to "Redman." After taking the marijuana from Whitehead, Redman left without paying but told Whitehead that he would return shortly.

When Redman did not return promptly, Whitehead became angry. Anderson and other witnesses saw Whitehead, who was a convicted felon, with a handgun and later with an AK-47 rifle. Whitehead threatened to kidnap a bystander, but Anderson talked him out of it. Whitehead was loud and his demeanor was angry and threatening. Shortly thereafter, Napier and an unknown man arrived at the studio. Gordon pushed the man and then hit the man with his gun. Right after that, Anderson heard a shot fired from the direction of the man, and then more shots were fired and everyone ran. Anderson saw Napier trying to run away. Another witness testified that, after Gordon hit the unknown man, she saw Whitehead come around a corner with the AK-47. The evidence showed that five different guns had been fired at the scene, but the medical examiner determined that the victim died from a rifle wound to his head, and the only rifle shell casings found at the scene were eight fired from the same AK-47.

After the jury was sworn but before the presentation of evidence began, the trial court held a hearing outside the presence of the jury on the State's motion to present similar transaction evidence. See USCR 31.3 (B); *Edwards v. State*, 282 Ga. 259, 261 (646 SE2d 663) (2007) (noting that a USCR 31.3 (B) hearing may be held after the trial has begun). During the hearing, Whitehead objected to the evidence, but the trial court ruled that the evidence could be admitted.

Consequently, during the trial Ramon Contres testified about an incident involving Whitehead that occurred about seven months after the Napier murder, early on the morning of June 28, 2008. Contres worked at a Jamaican nightclub located near Anderson's recording studio. Contres testified that he saw Whitehead fire two gunshots into the air in a crowd of about fifty people. Contres grabbed Whitehead, took him out of the club, and turned him over to the police. Contres stated that Whitehead was not arguing with anyone but instead fired into the air for no reason at all. A police officer who was working near the club heard two shots fired inside and saw people coming out of the club. He saw a security guard detaining Whitehead and went to assist. The officer had to use physical hand tactics and knee strikes to restrain Whitehead. Whitehead did not repeat his objection from the Rule 31.3 (B) hearing when this evidence was presented to the jury.

After the State rested, Whitehead testified. He admitted that he came to the recording studio to sell marijuana to Redman. After Redman left, Whitehead called him and they agreed to meet at a liquor store. However, when Whitehead arrived there, he saw police cars and decided to leave. He then went to his house to get his AK-47, because he knew that Redman and others had guns and thought something could go wrong. After Whitehead returned to the recording studio, a car drove into the parking lot and an unknown man got out and approached Whitehead and the others there. Gordon hit the man twice with a gun. The man, who was also armed, started backing up but fired his gun. Whitehead testified that he started running but was shot in the back and staggered to his car. (His wound did not require hospitalization.) Whitehead then fired his AK-47 multiple times, but he claimed that he did not aim at anyone and did not know that anyone had been shot.

Whitehead also called Gordon, who had pleaded guilty to aggravated assault, as a witness. Gordon testified that, on the day of the crimes, Whitehead had a .45 caliber handgun and an AK-47. Gordon said that, while at the studio, a man he did not know walked up to them with a handgun. Gordon began to fight with the man, hit him twice, and then let him go. The man then fired at Gordon and ran away. Gordon fired twice into the air and then ran and jumped over a small retaining wall. Whitehead's car was parked on the other side. Gordon testified that Whitehead had retrieved the AK-47 from the car and stood on the retaining wall and fired the rifle. Gordon also testified that, as they drove away from the crime scene, Whitehead told Gordon that he had shot the victim in the forehead.

After the case had been submitted to the jury for deliberations, the following colloquy occurred:

> The Court: What about the similar transactions? Does he [defense counsel] have — I think you probably, in an abundance of caution, do you have to put that on the record again?
> [The Prosecutor]: Or do your objections again?
> [Defense Counsel]: Ah —
> [The Prosecutor]: I don't know.
> The Court: Why don't you go ahead and do it, just in abundance of caution? Because you did object to my admission of the similar transaction. Did you want to renew that objection?
> [Defense Counsel]: Yes. I'll just renew the objection to the similar transaction.

The jury subsequently returned its guilty verdict. Viewed in the

light most favorable to the verdict, the evidence was sufficient for the jury rationally to have found Whitehead guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (99 SC 2781, 61 LE2d 560) (1979).

2. Whitehead contends that the trial court erred in admitting the similar transaction evidence. During the motion for new trial proceedings, neither party argued that this issue was waived, and on appeal, the District Attorney agrees with Whitehead that we should decide the evidentiary issue on the merits. The Attorney General, however, contends that Whitehead is procedurally barred from raising the issue.

Our case law, as the Attorney General correctly notes, requires a defendant to repeat at trial any objection that he made to similar transaction evidence at the Rule 31.3 (B) hearing or be deemed on appeal to have waived the objection. See *Dixon v. State*, 285 Ga. 312, 317 (677 SE2d 76) (2009); *Robinson v. State*, 283 Ga. 546, 547 (661 SE2d 538) (2008); *Young v. State*, 269 Ga. 478, 479 (499 SE2d 60) (1998). Under this rule, Whitehead would be barred from raising his similar transaction issue in this appeal, because even though he raises the same objection on appeal that he raised and obtained a ruling on during the Rule 31.3 (B) hearing, he did not reassert the objection when the similar transaction evidence was offered at trial. His reiteration of the objection while the jury was deliberating is insufficient to preserve the issue under our standard rule that evidentiary objections made after the close of evidence are untimely. See *Butler v. State*, 273 Ga. 380, 382 (541 SE2d 653) (2001).

The repetitive objection rule is apparently unique to similar transaction evidence, but this Court has never explained why that should be so. Instead, the rule appears to have evolved over the course of a few cases, without discussion, from the customary rules for preserving objections to evidence. Nor have we applied the rule with vigor, as the rule has been dispositive in only one recent case.

The first case in which this Court clearly articulated the repetitive objection rule was *Young*, 269 Ga. 478, where we stated that,

[e]ven though Young objected to the introduction of the similar transaction evidence at the hearing conducted pursuant to Uniform Superior Court Rule 31.3 (B), he was required to object to the introduction of the similar transaction evidence at trial in order to preserve the issue on appeal.

Id. at 479. The only authority cited for this proposition was *Smith v. State*, 268 Ga. 42, 43-44 (485 SE2d 189) (1997). *Smith*, however, stated only that a defendant waives review if he does not object to the

introduction of the similar transaction evidence "at trial." Id. at 43. Although *Smith* discusses a Rule 31.3 hearing that was held on the similar transaction evidence in that case, the opinion does not indicate whether Smith objected during that hearing, and so it may be that Smith did not object to the evidence *at any point* in the trial. See *Smith*, 268 Ga. at 43.

The only case that the *Smith* Court cited in support of its waiver holding was the Court of Appeals' decision in *Buckner v. State*, 219 Ga. App. 71 (464 SE2d 11) (1995). However, it appears that Buckner did not object to the similar transaction evidence on the grounds asserted on appeal during *either* the Rule 31.3 hearing *or* the trial. See id. at 72. *Buckner* therefore properly relied on cases in which the Court of Appeals found a waiver of similar transaction claims on appeal where the objection was *different* than the one asserted at trial. See id. (citing, among other cases, *Hunter v. State*, 202 Ga. App. 195, 198 (413 SE2d 526) (1991)). See also *McClarity v. State*, 234 Ga. App. 348, 349 (506 SE2d 392) (1998) (explaining that "[c]ases requiring the renewal of the objection at trial rely on *Hunter v. State*, which held only that a lack of similarity argument was not preserved by other objections at the pretrial similar transaction hearing, which objections were simply renewed at trial") (footnote omitted).

Our other cases that have clearly asserted the repetitive objection rule for similar transaction evidence have simply cited *Young*. See *Dixon*, 285 Ga. at 317; *Robinson*, 283 Ga. at 547.[2] It is also worth noting that the only case in which we applied the rule to resolve the claim was *Robinson*, 283 Ga. at 547. In all of our other cases, we found a waiver but proceeded to also address (and reject) the similar transaction claim on the merits. See *Dixon*, 285 Ga. at 317-318; *Young*, 269 Ga. at 479; *Smith*, 268 Ga. at 43.

Standard practice in Georgia has long required a party to make and obtain a ruling on an objection to evidence in the trial court, before or as the evidence is admitted, in order to preserve the objection for appeal, and standard practice also allows parties to raise on appeal only the same objections that were properly preserved below. See Paul S. Milich, Georgia Rules of Evidence, §§ 3.1, 3.2, 3.3 (2d ed. 2009). See also *Hunter*, 202 Ga. App. at 196-198, 199-202 (applying the standard rules to similar transaction evidence,

---

[2] A few other recent cases have found a waiver of similar transaction claims. See *Anderson v. State*, 286 Ga. 57, 58 (685 SE2d 716) (2009) (citing *Robinson*); *Williams v. State*, 279 Ga. 731, 732 (620 SE2d 816) (2005) (citing *Smith*); *Spear v. State*, 270 Ga. 628, 631 (513 SE2d 489) (1999) (citing *Smith*). However, these cases simply state that no objection was made at trial, and it appears that no objection was made either at the Rule 31.3 (B) hearing or when the evidence was presented to the jury, because the cases were decided after *Young* and presumably, if the waiver was based on the failure to *repeat* an objection, the Court would have said so.

over dissents by Chief Judge Sognier and Judge Beasley, who argued that *no specific objection* should be required in this context). It is not a standard trial practice, however, to require a party to repeat in front of the jury an objection that was made and ruled on at a preliminary hearing held to determine the admissibility of that very evidence. See Milich, § 3.6. See also *Jordan v. Johnson,* 223 Ga. App. 875, 877-880 (479 SE2d 175) (1996) (Birdsong, P. J., concurring specially) (explaining that "a grave danger exists to the fair trial rights of the parties to compel the raising of an objection or mistrial motion in the presence of the jury as to matters in which a motion in limine properly has been granted").

This Court has applied our repetitive objection rule on just a few occasions, because it arises only occasionally in our murder cases and the few other criminal cases that we review on certiorari. The rule affects many more criminal cases decided by the Court of Appeals. That court has questioned our position as follows:

> Requiring the defendant to make a second objection to similar transaction evidence at trial, after the court already has considered and decided the issue at a pretrial hearing, conflicts with the well-established rule that a party who loses a motion in limine need not renew the objection when the challenged evidence is introduced at trial. [See *Bryant v. State,* 271 Ga. 99, 100 (2) (515 SE2d 836) (1999); *Harley-Davidson Motor Co. v. Daniel,* 244 Ga. 284, 285 (1) (260 SE2d 20) (1979).] As the Supreme Court has observed, a pretrial ruling on a motion in limine "controls the subsequent course of the action, unless modified at trial to prevent manifest injustice." [*Harley-Davidson Motor Co.,* supra at 286 (1) (citation and punctuation omitted).] Accordingly, "[a]ll the purposes of an objection have already been fulfilled by the proceedings on the motion in limine. The trial court has been apprised of the possible error in admitting the evidence and has made its ruling, and the record has been perfected for appeal purposes. Therefore, we see no reason for another objection at trial in order to preserve the denial of the motion on appeal. [Id.]"
>
> There is no meaningful difference between a motion in limine to exclude evidence and a pretrial challenge to the admission of similar transaction evidence. [See *McClarity,* 234 Ga. App. at 349-350 (noting inconsistency between motion in limine rule, where objection need not be renewed at trial, and similar transaction rule, where trial objection is required).] In both instances, the defendant places his objections before the trial court, which considers and de-

cides the issue. Therefore, the same rule should apply in both instances — a defendant should not be required to renew his objection at trial, in front of the jury, to avoid waiver of a challenge to the admission of similar transaction evidence.

*Johnson v. State*, 276 Ga. App. 505, 508-509 (623 SE2d 706) (2005). Professor Milich has also noted that "[i]t is not clear why there is a special rule requiring renewal of an objection to similar transactions at trial. The same reasoning that dispenses with the need to renew an objection made in a pre-trial motion in limine also applies to similar transactions." Milich at § 11.14, n. 2.

As to other types of evidence challenged by motions in limine or other motions designed to obtain a pretrial ruling from the trial court, this Court has followed the standard rule. For example, we have held that an objection to the voluntariness of a confession that is overruled at a *Jackson-Denno* hearing does not need to be repeated when the confession is offered at trial. See *Simpson v. State*, 277 Ga. 356, 357 (589 SE2d 90) (2003). Similarly, we have held that an objection made at a hearing on a motion to suppress evidence based on an alleged illegal search does not have to be repeated at trial. See *Kilgore v. State*, 247 Ga. 70, 70 (274 SE2d 332) (1981). Neither this Court nor the Court of Appeals has ever explained why a different rule should be applied to similar transaction evidence.

Because it is so unusual, the repetitive objection rule that we have gradually, and perhaps inadvertently, created for this one type of evidence risks becoming a trap for the unwary and an invitation to ineffective assistance of counsel claims. This case demonstrates that risk. As quoted in full in Division 1, after the jury had been charged and had begun its deliberations, the trial judge noted that defense counsel "did object to my admission of the similar transaction," but wondered, "[d]o you have to put that on the record again?" Neither the experienced trial judge nor the experienced prosecutor and defense lawyer were certain of the answer. The answer under our current rule was that defense counsel did have to repeat the objection, despite the fact that it was made and ruled on at the Rule 31.3 hearing — but he had to repeat it when the evidence was offered at trial, not after the evidence was closed, when it is too late. See *Butler*, 273 Ga. at 382.

In light of these considerations, we believe that our unique repetitive objection rule for similar transaction evidence should be abandoned, and the rules for objecting to that type of evidence should conform to our ordinary rules for objecting to evidence. Of course, a trial court considering an objection to certain evidence at a hearing may still reserve a final ruling until it sees how the trial is

unfolding, and a party remains free to renew an objection during trial if it believes that the court's previous ruling should be reconsidered in light of the other evidence or arguments presented to the jury. But a defendant should not be required to raise and have overruled before the jury the very same objection to similar transaction evidence that already was raised and ruled on by the trial court. Accordingly, we overrule *Dixon, Robinson, Young*, and other cases to the extent that they require a defendant to repeat an objection at trial to similar transaction evidence that was raised and overruled at a Rule 31.3 (B) hearing. In this case, Whitehead raises the same issue on appeal that he raised at the Rule 31.3 (B) hearing, and so he properly preserved his claim and we may address it on the merits.

3. Whitehead contends that the trial court erred in admitting the evidence relating to the nightclub incident because that incident was not sufficiently similar to the charged crimes. Evidence that a defendant has committed an independent offense or bad act is admissible if the State shows and the trial court rules that there is a "'sufficient connection or similarity between the independent offenses or acts and the crime charged so proof of the former tends to prove the latter.'" *Pareja v. State*, 286 Ga. 117, 119 (686 SE2d 232) (2009) (citation omitted). This test applies whether the similar transaction occurred before or, as here, after the charged crimes. See *Simpson v. State*, 282 Ga. 508, 510 (651 SE2d 732) (2007); *Scott v. State*, 219 Ga. App. 906, 908 (467 SE2d 348) (1996). "'When considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question.'" *Pareja*, 286 Ga. at 121 (citation omitted). We will uphold the trial court's decision to admit a similar transaction unless it is an abuse of discretion. See id.

Here, the trial court did not abuse its discretion in deciding that Whitehead's firing his gun twice in a crowded nightclub was similar enough to his wildly firing his gun outside the recording studio nearby a few months earlier. The nightclub incident was probative of Whitehead's course of conduct of unlawfully possessing loaded firearms, despite his status as a convicted felon, and of firing those guns recklessly in public places in the presence of many other people. We also note that the trial court properly gave the jury a detailed limiting instruction regarding their consideration of the similar transaction evidence.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 1, 2010.

*Gerard B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Leonora Grant, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.