296 Ga. 543
FINAL COPY

S14A1685.  CLARK v. THE STATE.

NAHMIAS, Justice.

Appellant Constance Clark was convicted of malice murder and a firearm offense as a party to the shooting death of her husband, William Eric Clark.  On appeal, she argues that the evidence presented at trial was insufficient to support her convictions and that the trial court erred in allowing the prosecutor to offer unsworn testimony during the State's opening argument, in admitting testimony by a medical examiner who did not perform the victim's autopsy, and in permitting a witness's videotaped statement to be played for the jury multiple times in alleged violation of the continuing witness rule.  We affirm.[1]

---

[1] The victim was killed on December 13, 2005.  On May 29, 2009, after the police had reinitiated the investigation as a "cold case" in 2008, a Fulton County grand jury indicted Appellant, Jean Pierre DeVaughn, and Christopher Tumlin for malice murder, two counts of felony murder, aggravated assault with a deadly weapon, hijacking a motor vehicle, and possession of a firearm during the commission of a felony; Appellant and DeVaughn were also charged with conspiracy to commit murder. Appellant was tried separately from August 8 to 16, 2011, and the jury found her not guilty of hijacking and felony murder based on hijacking but guilty of the other charges.  The trial court sentenced Appellant to life in prison for malice murder and a consecutive term of five years for the firearm conviction.  The remaining felony murder verdict was vacated by operation of law, and the aggravated assault and conspiracy counts merged.  Appellant filed a timely motion for new trial, which she amended with the assistance of new counsel on August 31, 2012.  After a hearing, the trial court denied the motion on April 24, 2013.  Appellant filed a timely notice of appeal, and the case was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

DeVaughn was tried before Appellant and convicted on all charges; this Court recently affirmed his convictions on appeal.  See DeVaughn v. State, 296 Ga. __ (__ SE2d __) (2015). Tumlin testified at Appellant's trial under a grant of use immunity; the record does not indicate how

1. (a) Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. Appellant and the victim were married in 1999; they lived in Bessemer, Alabama. In June 2000, the victim obtained a $100,000 life insurance policy. In June 2005, less than six months before he was killed, the victim obtained another policy in the amount of $500,000. Appellant was named as the primary beneficiary on both policies. At some point during their relationship, Appellant and the victim began having financial difficulties, and they argued about whether Appellant should spend their money on illegal drugs. The couple borrowed money from the victim's mother, and they eventually filed for bankruptcy. In the late spring or early summer of 2005, Appellant pulled a gun on the victim during a heated argument. That fall, one of Appellant's friends saw her in a barber shop and asked how the victim was doing. Appellant replied, "F**k Eric. I need to collect some insurance money on his ass."

The victim worked a side job as a bartender, and he planned to drive to Atlanta on December 13, 2005, to buy liquor at a discounted rate for an event.

---

the charges against him were resolved. The record does not indicate whether Khorey Branch, who was with DeVaughn and Tumlin at the time of the crimes, was ever charged.

2

Appellant called her cousin Jean Pierre DeVaughn, who lived in Atlanta, telling him that the victim was an abusive husband and asking him to kill the victim. Appellant then gave the victim DeVaughn's cell phone number and told the victim that she had arranged for him to meet with DeVaughn, who could help him find the discount liquor store. Meanwhile, DeVaughn called his friend Khorey Branch to ask if Branch knew where he could buy a gun, and Branch contacted Christopher Tumlin, who agreed to sell DeVaughn a handgun. On the evening of December 13, DeVaughn and Branch went to Tumlin's home in southwest Atlanta, where Tumlin sold DeVaughn a handgun for $125. DeVaughn then drove with Tumlin and Branch to a gas station near Six Flags, where they met up with the victim around 9:00 p.m.

Under the impression that he was being led to the liquor store, the victim then followed DeVaughn to Waterford Edge, an unfinished subdivision near College Park where DeVaughn had previously delivered construction materials for a job. DeVaughn and the victim pulled their cars into the driveway of an unfinished house, got out, and began to talk while Tumlin and Branch remained in DeVaughn's car. During what appeared to be a casual conversation, DeVaughn suddenly pulled out his gun and shot the victim four or five times,

3

including twice in the head, killing him. Tumlin then jumped out of DeVaughn's car and got into the victim's car, and both cars sped out of the subdivision. Tumlin abandoned the victim's car about a mile from his home. DeVaughn drove Branch home before returning home himself.

About two weeks after the murder, Appellant called the detective assigned to the case. She did not seem concerned with the progress of the investigation, instead asking why the insurance company had not paid her the death benefit on her husband. Derrick Henry, who dated Appellant after the murder, told investigators that Appellant had paid her cousin Pierre $5,000 to kill the victim. At trial, Tumlin testified that he overheard DeVaughn say "he knew this lady that wanted her husband killed" in the car on the way to the gas station where they met the victim. And Branch testified that on the car ride home after the shooting, DeVaughn said that his cousin had wanted her husband killed because he was being abusive. Cell phone records showed four calls between DeVaughn and Appellant on the night the victim was killed, two calls within the two hours before the shooting and two calls about two hours afterward.

(b)    Contrary to Appellant's initial argument, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find

4

Appellant guilty beyond a reasonable doubt as a party to the crimes for which she was convicted. Her convictions therefore survive due process review under the federal constitution. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (defining parties to a crime); Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

(c)    Appellant also contends that the evidence was insufficient to support her convictions under Georgia statutory law because the evidence was entirely circumstantial and did not exclude every reasonable explanation except that of her guilt. Under former OCGA § 24-4-6 (§ 24-14-6 in the new Evidence Code), to warrant a conviction on circumstantial evidence alone, the proven facts must not only be consistent with the hypothesis of guilt, but also must exclude every reasonable theory other than the guilt of the accused.

The evidence against Appellant, most particularly the evidence from Derrick Henry, was not entirely circumstantial, so her argument rests on an

incorrect premise.[2]  Moreover, the circumstantial evidence the State presented

was sufficient to support Appellant's convictions.  As this Court has explained,

> [w]hether every reasonable hypothesis except that of the guilt of the defendant has been excluded is a question for the jury.  Where the jury determines the evidence excluded every reasonable hypothesis save that of guilt, such a finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

Merritt v. State, 285 Ga. 778, 779 (683 SE2d 855) (2009) (citations omitted).

The evidence in this case showed that Appellant and the victim were in

financial distress, their relationship was strained, Appellant pulled a gun on the

victim months before his death, and Appellant stood to gain $600,000 from the

victim's death as the primary beneficiary of his life insurance policies.  In

addition, shortly before the victim's death, Appellant told a friend that she

needed to collect insurance money on the victim, and two weeks after the

killing, Appellant contacted the police to ask why she had not received the

insurance money rather than asking about the progress of the investigation into

---

[2]  Appellant asserts that the trial court struck Henry's testimony, causing the hearsay testimony offered by Detective Wilson to impeach Henry to have no probative value.  Actually, Henry's testimony was not struck, only his mention on direct examination of a rumor about the murder that he had heard "in the street."  Henry then testified on cross-examination that Appellant was upset by the rumor that she had killed her husband.  Detective Wilson later testified without objection that Henry "told us that [Appellant] had paid her cousin Pierre $5,000 to kill [the victim]. . . .  He didn't say anything about he heard.  He told us as if he knew."

6

the murder of her husband. See *Merritt*, 285 Ga. at 780 (explaining that the defendant's difficult financial situation, the fact that she stood to gain from her husband's death as the beneficiary of his life insurance policies, and her threats and violent actions toward the victim were relevant in establishing her guilt based entirely on circumstantial evidence). Tumlin and Branch testified that DeVaughn indicated that he killed the victim for Appellant. And four calls were placed between Appellant and DeVaughn in the hours preceding and following the shooting. See Crawford v. State, 294 Ga. 898, 901-902 (757 SE2d 102) (2014) (phone records reflecting four calls between the parties to a murder on the day of the crime sufficiently corroborated accomplice's testimony). Taken as a whole, this evidence was sufficient for the jury to exclude every reasonable explanation save that of Appellant's guilt. See Merritt, 285 Ga. at 779 ("[The circumstantial evidence] need not exclude every *conceivable* inference or hypothesis — only those that are reasonable.").

(d)     Appellant further contends that the evidence was insufficient because she was convicted based upon the testimony of a single accomplice, Christopher Tumlin. Under former OCGA § 24-4-8 (§ 24-14-8 in the new Evidence Code):

7

The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

We have explained that under this statute,

sufficient corroborating evidence may be circumstantial, it may be slight, and it need not of itself be sufficient to warrant a conviction of the crime charged. It must, however, be independent of the accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict.

Threatt v. State, 293 Ga. 549, 551 (748 SE2d 400) (2013) (citations and punctuation omitted). The corroborating evidence may be testimony from another accomplice. See Hanifa v. State, 269 Ga. 797, 808 (505 SE2d 731) (1998).

Appellant's argument is meritless. Tumlin's testimony was not the sole basis for a finding of any element of the offenses of which Appellant was convicted, and in any event his testimony was adequately corroborated by other evidence, including Branch's testimony.

2. Appellant argues that her convictions should be reversed because

8

the trial court allowed the prosecutor to offer unsworn testimony about his role in the investigation during his opening statement. Appellant did not object to the prosecutor's opening statement, however, and she therefore failed to preserve this issue for appeal. See Johnson v. State, 293 Ga. 641, 643 (748 SE2d 896) (2013); Hall v. State, 292 Ga. 701, 702 (743 SE2d 6) (2013). Moreover, Appellant has not shown any harm from the only aspect of the prosecutor's opening statement that was not supported by the evidence the State then presented to the jury — a brief reference to when the prosecutor had been assigned the case. See Burgeson v. State, 267 Ga. 102, 107 (475 SE2d 580) (1996). We note in this respect that prior to opening statements, the trial court instructed the jury that "[t]his opening statement is not evidence. Remember that what the lawyers say is not evidence but it is a preview or an outline of what they expect the evidence to be."

3.    Appellant contends that the trial court erred by allowing a medical examiner who did not perform the victim's autopsy to testify that the victim's cause of death was gunshot wounds to the head and torso. Again, however, Appellant did not object to the medical examiner's testimony at trial and therefore failed to preserve this issue for appeal. See Whitehead v. State, 287

9

Ga. 242, 246 (695 SE2d 255) (2010).

In any event, this Court has held, as a matter of Georgia evidence law in effect at the time of this trial, that "[a]n expert may base her opinions on data gathered by others." Watkins v. State, 285 Ga. 355, 358 (676 SE2d 196) (2009).[3] The medical examiner who testified was not a "mere conduit" for the findings of the medical examiner who performed the autopsy, who had moved out of state by the time of trial and was unavailable to testify. Id. Instead, the testifying expert reviewed the x-rays and photographs taken during the autopsy as well as the autopsy report and reached her own opinion. See Rector v. State, 285 Ga. 714, 715-716 (681 SE2d 157) (2009). Moreover, the admission of this expert testimony was harmless, because the fact that the victim had been shot to death was never disputed at trial, where eyewitness evidence established that the victim had been shot multiple times at close range and left lying in a deserted driveway. See id. at 716.

4.      Finally, Appellant contends that the trial court violated the continuing witness rule by allowing Tumlin's videotaped statement to the

---

[3] The new Evidence Code addresses this issue in OCGA § 24-7-703. See also OCGA § 24-7-705.

10

police, which Appellant had admitted into evidence during Tumlin's cross-examination, to be replayed to the jury multiple times — during the subsequent testimony of a detective who took the statement, during the State's closing argument, and in the courtroom at the jury's request during its deliberations. Yet again, Appellant did not object at trial, and thus she failed to preserve this claim for appeal. See Whitehead, 287 Ga. at 246. But in any event, objections based on the continuing witness rule would have been meritless. That rule of Georgia law regulates which documents or recordings go into the jury room with the jury during deliberations and which ones do not. See Paul S. Milich, Ga. Rules of Evidence § 19:8 (2014-2015 ed.). The rule has no application to the replaying of recorded statements during the examination of witnesses, during closing arguments, or in the courtroom at the jury's request during deliberations. See Lopez v. State, 291 Ga. App. 210, 214 (661 SE2d 618) (2008) ("[T]he continuing witness rule does not apply where, as here, the videotape was replayed to the jury a single time 'in a controlled environment, the courtroom, with all parties and the trial judge present.'" (citation omitted)).

Judgment affirmed. All the Justices concur.

11

Decided February 16, 2015.

Murder. Fulton Superior Court. Before Judge McBurney.

Jimmonique R. S. Rodgers, Thomas D. Wight, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Lenny I. Krick, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General, for appellee.