306 Ga. 485
FINAL COPY

S19A0882. GRAVES v. THE STATE.

BLACKWELL, Justice.

Justin Marquis Graves was tried by a Cobb County jury and convicted of murder, aggravated assault, and the unlawful possession of a firearm during the commission of a felony, all in connection with the robbery and fatal shooting of Michael Bemus. Graves appeals, contending that the State failed to present evidence legally sufficient to sustain his convictions. Graves also claims that he was denied the effective assistance of counsel at trial. Upon our review of the record and briefs, we find no merit in these claims of error, and we affirm.[1]

---

[1] A Cobb County grand jury indicted Graves in October 2015, charging him with murder with malice aforethought, three counts of murder in the commission of a felony, aggravated assault (with a deadly weapon), aggravated assault (with the intent to rob), and the unlawful possession of a firearm during the commission of a felony. Graves was tried in October 2017, and he was found guilty of all charges. The trial court sentenced Graves to imprisonment for life without the possibility of parole for malice murder, a concurrent term of imprisonment for twenty years for aggravated assault (with the intent to rob), and a consecutive term of imprisonment for five years for the unlawful

1. Viewed in the light most favorable to the verdict, the record shows that Graves was living at the Masters Inn motel, located near SunTrust Park in Cobb County. On August 5, 2015, Graves told the motel manager that he did not have enough money to pay for his room but would come back to pay soon.

Around 1:25 a.m. on August 6, Graves called for a taxi to pick him up from the Sky Suites motel, which is near the Masters Inn. Surveillance video recorded Graves walking from the Masters Inn to the gas station next door and then to the Sky Suites, where he was picked up by Bemus in his taxi around 1:45 a.m. About 25 minutes later, Bemus was fatally shot in the back of his head as he pulled into the parking lot of the Allround Suites motel in Marietta. Surveillance video recorded Bemus's taxi crashing into a parked car after Bemus was shot and Graves (wearing a black sweatshirt over

possession of a firearm during the commission of a felony. The felony murders were vacated by operation of law, and the trial court merged the aggravated assault (with a deadly weapon) with the murder. Graves filed a timely motion for new trial in October 2017, and the trial court denied his motion in March 2018. Graves filed a timely notice of appeal, and his appeal was docketed in this Court for the April 2019 term and submitted for decision on the briefs.

a long white t-shirt) exiting the taxi alone. Graves walked from the crime scene to the front desk of the Masters Inn, arriving just after 3:00 a.m. At the front desk, he paid $41 in cash and received a key card for entry into his motel room.

About three hours later, police investigators executed a search warrant for Graves's room. They discovered a black sweatshirt that tested positive for gunshot primer residue. In addition, DNA testing of a bloodstain on Graves's white t-shirt revealed the presence of both Bemus's and Graves's DNA.

At trial, Graves admitted that Bemus gave him a ride from the Sky Suites to the Marquis Place apartments in Marietta, and he said that Bemus waited for him at Marquis Place while Graves unsuccessfully attempted to call a woman whom he believed lived there. According to Graves, a stranger approached him at the apartment complex, said that he needed a ride to the Allround Suites, and asked if he could share the taxi. According to Graves, Bemus agreed to drop off the unidentified man at the Allround Suites on the return trip to the Masters Inn, but the man got into "a

3

heavy argument" with Bemus "on some racial stuff" and shot Bemus as his taxi pulled into the Allround Suites. Graves acknowledged that he was the man depicted in the surveillance recordings who can be seen exiting the taxi after it crashed. Graves also admitted that he walked from the Allround Suites to the front desk of the Masters Inn to pay his rent. Graves's testimony was not consistent with the oral or written statements that he had provided to police investigators, which included evolving claims about his activities between 1:00 and 3:00 a.m. on August 6 that never mentioned being a witness to a murder or meeting the stranger at the Marquis Place apartments.[2]

---

[2] Graves first claimed that he only left his motel room one time during those hours to walk to the gas station to buy cigarettes and that he immediately returned to his room. He later said that someone had borrowed his phone at the gas station to call a taxi and that the person had told the dispatcher that he wanted to be taken to the Marquis Place apartments. When the investigators informed Graves that they had evidence that he had gone places other than the gas station, Graves said that he may have walked some other places but that he had not ridden in a taxi. When the officers told him that they had evidence that the person who called for a taxi from his phone identified himself as "Justin," Graves suggested that it was not surprising for the stranger to share his name. Graves then admitted that he waited with the stranger who had used his phone for about 20 minutes for the stranger's taxi to arrive, and he acknowledged that he walked from the gas station to the Sky

Graves contends that the evidence presented at his trial is insufficient to sustain his convictions and failed to disprove his claim that Bemus was killed by an unidentified stranger.[3] See OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). But not every hypothesis is a reasonable one, and the evidence "need not exclude every *conceivable* inference or hypothesis — only those that are reasonable." Merritt v. State, 285 Ga. 778, 779 (1) (683 SE2d 855) (2009) (emphasis in original). Whether an alternative hypothesis raised by the defendant is

---

Suites, but he said he only did so to catch a view of the moon. Graves later said that he had walked to the gas station a second time (also to buy cigarettes). When the investigators told Graves that they had evidence he had been inside the taxi, Graves finally admitted that he rode in the taxi (alone) to the Marquis Place apartments and that he "got dropped off and that was it."

[3] Graves also challenges the State's theory that Graves killed Bemus in order to rob him, and Graves points to evidence that he was not under threat of being evicted from the motel if he failed to pay for his room and that approximately $375 was found on Bemus's body that would have been handed over in a robbery. But Graves himself acknowledged that he walked from the scene of the crime to the front desk of the motel in order to pay for his room because he believed that he had been locked out due to his failure to pay and that he needed to obtain a new key card for his room.

"reasonable" is a question committed principally to the jury, "and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law." Carter v. State, 276 Ga. 322, 323 (577 SE2d 787) (2003).

Here, Graves claimed at trial that he agreed to share his taxi with a stranger he met at the Marquis Place apartments, that this stranger killed Bemus (based on an unexplained racial argument) while somehow avoiding being recorded (as Graves was) on surveillance video, and that Graves chose not to mention this person in his statements to the police after he was arrested. The jury was authorized to reject this hypothesis, and the evidence was sufficient to authorize the jury to find Graves guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); see also Outler v. State, 305 Ga. 701, 704 (1) (a) (827 SE2d 659) (2019).

2. Graves claims that he was denied the effective assistance of

6

counsel when his lawyer failed to procure expert witnesses to testify about two different matters and when his lawyer failed to ensure that voir dire was recorded. To prevail on a claim of ineffective assistance, Graves must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. See Strickland v. Washington, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Graves must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U.S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Graves must show "a reasonable probability that, but for his lawyer's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694 (III) (B). This burden is a heavy one, see Kimmelman,

7

477 U.S. at 382 (II) (C), and Graves has failed to carry it.

(a) First, Graves contends that his trial lawyer should have procured an expert witness to testify about the "G.D. Insane" gang. According to Graves's trial testimony, the stranger who shot Bemus exclaimed "I'm GD insane" at or around the time of the shooting. At the hearing on Graves's motion for new trial, Graves's purported expert witness[4] testified that a gang known as "G.D. Insane" was active in Cobb County and that the (alleged) exclamation was consistent with "set claiming," which is when a gang member identifies his gang after committing a violent act. Had this evidence been presented at trial, Graves now contends, there is a reasonable probability that the jury would have reached a different verdict.

To begin, Graves has failed to establish deficient performance with respect to this part of his ineffective assistance claim. At the hearing on his motion for new trial, Graves did not show that his

---

[4] At the hearing on Graves's motion for new trial, the trial court stated that it was "not at all convinced [the witness is] an expert," and it explicitly refused to conclude that the witness was qualified to testify as an expert on the G.D. Insane gang.

trial lawyer knew or should have known that "G.D. Insane" was the name of a gang or that a reasonable lawyer should have even considered obtaining an expert to explain that "I'm GD insane" did not merely mean "I'm goddamn crazy."[5] See Wright v. State, 285 Ga. 428, 436 (6) (b) (677 SE2d 82) (2009). Moreover, Graves also has failed to prove prejudice. His lawyer *did* present evidence at trial that the area in which the crimes occurred was "very dangerous" and had "significant gang activity." And Graves has not shown that expert testimony about "G.D. Insane" would have rebutted the substantial evidence of his guilt: primarily, the surveillance video recording that shows Graves emerging alone from the taxi. Because Graves "has not shown a reasonable probability that the result of his trial would have been different had the expert witness testified at trial, he has failed to establish ineffective assistance." Parker v.

---

[5] The only evidence even suggesting that a reasonable lawyer should have known about the gang was the testimony of Graves's purported expert witness (in response to the question whether "G.D. Insane [was] a real gang [that] actually does, in fact, exist") that the gang "does, in fact, exist and [is] active in Cobb County and throughout the Metro Atlanta area."

9

State, 305 Ga. 136, 141-142 (4) (a) (823 SE2d 313) (2019).

(b) Graves also says that his trial lawyer should have procured an expert witness to explain how Graves's autism prevented him from "react[ing] in a . . . stressed manner after witnessing the murder" of Bemus. But Graves failed to obtain such an expert for the hearing on his motion for new trial (or otherwise show what such a witness would have said), nor did Graves establish that he had been diagnosed with autism. As a result, he cannot show either that his lawyer performed deficiently when he failed to call such an expert or that he suffered any prejudice as a result. See Crowder v. State, 294 Ga. 167, 169 (3) (751 SE2d 334) (2013).

(c) Finally, Graves claims that he was denied the effective assistance of counsel when his trial lawyer failed to ensure that voir dire was fully transcribed. But Graves does not even suggest what error may have occurred during the unrecorded portion of voir dire. He merely makes a passing reference to one potential juror (who ultimately did not sit on the jury) whom Graves's trial lawyer

unsuccessfully moved to strike for cause.[6] As a result, Graves has not shown any prejudice resulting from his lawyer's failure to ensure that voir dire was recorded. See <u>Domingues v. State</u>, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003) ("It cannot be said that counsel were ineffective for failing to have voir dire transcribed because Domingues does not assert that anything harmful or prejudicial transpired during voir dire.").[7]

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 5, 2019.

---

[6] The trial court did record Graves's objection to this potential juror, and the record shows that the trial lawyer sought to have the potential juror removed for cause because the man had said only that "he would try" to be fair and impartial. The record also includes the trial court's recitation of the statutory questions to the potential jurors required by OCGA § 15-12-164 (a), and the potential juror at issue did not respond affirmatively to any of those questions.

[7] Graves also asserts as a separate error the trial court's failure to record voir dire. But it is only mandatory to record voir dire in cases in which the death penalty may be imposed. See <u>McFarlane v. State</u>, 291 Ga. 345, 346 (2) (729 SE2d 349) (2012).

11

Murder. Cobb Superior Court. Before Judge Grubbs, Senior Judge.

*Alan J. Levine*, for appellant.

*John S. Melvin, District Attorney, Jesse D. Evans, John R. Edwards, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.