**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 14, 2022**

# In the Court of Appeals of Georgia

A22A0349. DRAKE v. THE STATE.

PINSON, Judge.

Dijoun Will Drake was convicted of armed robbery and other crimes for robbing a convenience store with a co-defendant, Jonathan George Wilson. On appeal, Drake (1) challenges the sufficiency of the evidence, claiming that the circumstantial evidence against him did not eliminate every reasonable hypothesis other than his guilt; and (2) claims that the trial court gave confusing jury instructions about mere presence and mere association. We reject each contention. We first conclude that the evidence authorized the jury to find that the only reasonable hypothesis was that of Drake's guilt. The evidence showed that the two robbers used a car belonging to Drake's girlfriend, which they crashed soon after the robbery, and that around the same time, Drake's co-defendant Wilson (whose blood was identified

in the crashed car) exchanged a number of phone calls and text messages with people connected to Drake. A rational juror could have found that the only reasonable explanation for this evidence was that Drake committed the crimes alongside Wilson, and so Drake's sufficiency claim fails. As for the trial court's jury instructions, we have already held that Georgia's pattern instructions on mere presence and mere association correctly state the law, and the trial court's instructions on those issues tracked the pattern instructions almost exactly.

## Background

Just after midnight on March 5, 2015, Mohammad Nazir, the manager of a Corner Mart Chevron, and two other employees were closing up for the evening when they were robbed by two men. Nazir's testimony and surveillance footage showed that the two men forced their way into the Corner Mart and took money, scratch-off lottery tickets, and condoms from the store, as well as Nazir's cell phone, and the wallet of one of the coworkers, Jani Imran. Both men wore black gloves and had their faces covered. One man was carrying a silver handgun, and the other carried a pump shotgun. The perpetrators then drove off in a white Lexus. After the perpetrators fled, Nazir called 911.

Ten minutes later, police received a call about a single-vehicle accident about 2.5 miles from the Corner Mart. Responding to the scene, police found a Lexus that had gone off the roadway. The Lexus was registered to a woman named Sharecka Calhoun, who was Drake's girlfriend. Police contacted Calhoun and learned that she was not in possession of her car at the time of the crime.

Police obtained a warrant and searched the Lexus. In and around the car, they found items that had been stolen from the Corner Mart—cash, lottery tickets, condoms, Imran's wallet—as well as cloth gloves, a knit cap, a white wristwatch, a toy pump-action shotgun that looked real, a silver handgun, and a cell phone. They also found Drake's wallet, social security card, and expired driver's license. Both airbags had deployed in the crash, and both had blood on them. Blood from both airbags, as well as swabbings from elsewhere in the Lexus, were later matched through DNA analysis to Drake's co-defendant, Wilson. No similar matches were made to Drake or to any other person.

The police investigation also relied on cell phone records. The investigation revealed that on the night of the crime, Sharecka Calhoun was with her friend, Danielle Johnson, and had access to Johnson's cell phone. Police obtained a search warrant for Johnson's phone, and they also obtained a warrant for the phone of

3

Drake's co-defendant, Wilson. An examination of Johnson's and Wilson's cell phone records revealed a "significant increase in incoming and outgoing calls" immediately after the time of the crime, including one call from Johnson's phone to Calhoun's phone and numerous calls and text messages between the phone of Sharecka's sister, Shavana Calhoun, and those of Wilson and Johnson.

Drake and Wilson both rested without presenting any evidence. In closing, Drake's counsel argued that the State possessed no direct evidence against Drake and had brought the case against him simply because he was "close to the people who were involved." As to the circumstantial evidence, counsel urged the jury to consider "reasonable, alternative" explanations.

The trial court's charge to the jury included two instructions that are at issue in this appeal. The first was the court's instruction on mere presence:

> A jury is not authorized to find a person who is merely present at the scene of the commission of a crime at the time of its perpetration guilty of consent in and concurrence in the commission of the crime, unless, the evidence shows beyond a reasonable doubt that such person committed the alleged crime, helped in the actual perpetration of the crime or participated in the criminal endeavor.

The second instruction concerned mere association:

> A jury is not authorized to find a person who is merely associated with other persons involved in the commission of a crime, guilty of, consent in or concurrence in the commission of the crime, unless the evidence shows beyond a reasonable doubt that such person helped in the actual perpetration of the crime or participated in the criminal endeavor.

Neither defendant objected to either instruction.

Drake was convicted of multiple counts of armed robbery, aggravated assault, and possession of a firearm during the commission of a crime.[1] The trial court granted Drake's motion for new trial as to the conviction for possessing a firearm during the commission of a crime, and that conviction was later nolle prossed. The court denied the motion for new trial as to the other convictions, and this appeal followed.

## Discussion

1. Drake claims that the circumstantial evidence against him was not sufficient to support his convictions. To review the sufficiency of the evidence, we neither weigh evidence nor judge the credibility of witnesses. Instead, we determine only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

---

[1] Wilson was convicted of all the same counts. His convictions were affirmed on appeal. See *Wilson v. State*, ___ Ga. App. ___ (Case No. A22A0348, decided on ____).

a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

A conviction can rest on circumstantial evidence alone if that evidence "exclude[s] every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6; see *Graham v. State*, 320 Ga. App. 714, 720 (2) (740 SE2d 649) (2013). The key word is "reasonable." The evidence "need not exclude every *conceivable* inference or hypothesis." *Graves v. State*, 306 Ga. 485, 487 (1) (831 SE2d 747) (2019) (cleaned up). And both the question whether an alternative hypothesis is "reasonable" and the ultimate question whether the circumstantial evidence excludes such hypotheses are for the jury to answer. Id.; see also *Merritt v. State*, 285 Ga. 778, 779 (1) (683 SE2d 855) (2009). We will not disturb a jury's finding on those questions unless it is "insupportable as a matter of law." *Graves*, 306 Ga. at 487 (1).

Here, Drake contends that the circumstantial evidence does not exclude the "reasonable hypothesis" that he "was not one of the perpetrators of the armed robbery and was in fact elsewhere when it took place." We disagree. Given the evidence introduced at trial, a rational juror could have rejected Drake's alternative hypothesis as unreasonable. Under that hypothesis, Drake left his driver's license, wallet, and

6

social security card in his girlfriend's Lexus not in his rush to get away from the accident scene after he and Wilson crashed the car, but at some unknown time before the robbery took place. This might be plausible enough in isolation: many of us have left personal items in someone else's car before. But the rest of the story is hard to figure. If Drake were out of the picture, then two strangers with no apparent relationship to Drake's girlfriend somehow gained access to her car the night of the robbery. And then, right after robbing the store, those same strangers for some reason placed and received a flurry of phone calls and text messages to and from people close to Drake's girlfriend (both her sister and a friend she was with at the time). Is this alternative Drake-less hypothesis conceivable? Maybe. But the circumstantial evidence need only exclude reasonable hypotheses to support a conviction. And a rational juror could have concluded that this hypothesis, which removes the only apparent link between the perpetrators and the Lexus and post-crime phone calls—i.e., Drake—was simply not a reasonable one. See, e.g., *Graves*, 306 Ga. at 487 (1) (jury was authorized to reject hypothesis that an unseen man who had shared a taxi with the defendant had shot the driver, where only the defendant was seen on surveillance video exiting the taxi after the crash); *Graham*, 320 Ga. App. at 720 (2) (jury was authorized to reject hypothesis that the infant victim's injuries were caused

by her father rather than the defendant where, among other things, the victim had been in the defendant's care for two hours before she died and a medical expert testified that she would have died "within minutes or hours" after suffering brain injury); *Crawford v. State*, 292 Ga. App. 463, 464-65 (1) (664 SE2d 820) (2008) (presence of defendant's fingerprints in multiple locations in the victim's home and car was sufficient to convict him of burglary, rape, armed robbery, hijacking a motor vehicle, and other crimes, even though the record showed defendant had been inside defendant's home on an earlier occasion). Drake's sufficiency claim therefore fails.

2. In two related claims of error, Drake contends that the trial court's instructions on mere presence and mere association were "fatally flawed." Because trial counsel did not object to these instructions, we review them only for plain error: an error that is obvious and not subject to reasonable dispute, and which affected the outcome of the trial. See OCGA § 17-8-58 (b); *Woodard v. State*, 296 Ga. 803, 806 (2) (771 SE2d 362) (2015); *Vasquez v. State*, 306 Ga. 216, 225 (2) (830 SE2d 143) (2019) (citation omitted). An appellate court has discretion to remedy plain error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. Accord *Puckett v. United States*, 556 U. S. 129, 135 (II) (129 SCt 1423, 173 LE2d 266) (2009).

We discern no error, much less plain error, in the challenged instructions. Jury charges are generally considered correct and free from error if "the charges, as given, were correct statements of the law and, as a whole, would not mislead a jury of ordinary intelligence." *Sims v. State*, 296 Ga. App. 461, 464 (3) (675 SE2d 241) (2009) (citation and punctuation omitted). The court's instructions on mere presence and mere association tracked the pattern jury instructions virtually word for word. See Ga. Suggested Pattern Jury Instructions - Criminal §§ 1.43.30 (mere presence), 1.43.31 (mere association). And we have already approved those pattern instructions as correct statements of the law. See, e. g., *Potts v. State*, 331 Ga. App. 857, 863-66 (1) (771 SE2d 510) (2015) (mere association); *Arnold v. State*, 305 Ga. App. 45, 54-55 (7) (699 SE2d 77) (2010) (mere presence).

*Judgment affirmed. McFadden, P. J., and Gobeil, J., concur*.