**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: March 4, 2025

S24A1182.  DILLARD v. THE STATE.

BOGGS, Chief Justice.

Appellant Savion Nathaniel Dillard challenges his 2021 convictions for malice murder and other crimes in connection with the armed robbery of two 15-year-olds, Branden Gerena and Denzel Idris, during which Gerena was fatally shot. Appellant contends that the evidence was legally insufficient to support his convictions. However, the evidence was sufficient to support Appellant's convictions as a matter of both due process and Georgia statutory law, and we therefore affirm.[1]

---

[1] The crimes occurred shortly after midnight on the morning of July 1, 2019. On October 23, 2019, a Gwinnett County grand jury indicted Appellant and Denzel Wilburn for malice murder, two counts of felony murder, two counts of armed robbery, two counts of aggravated assault with a deadly weapon, and possession of a firearm during the commission of a crime. Wilburn later pled guilty to a reduced charge and was subpoenaed to testify against

1.   Viewed in the light most favorable to the verdicts, the evidence at trial showed as follows. On June 24, 2019, Appellant bought an extended magazine for a 9mm handgun. On June 30, 2019, Appellant, using the name "Murksumbilly," contacted Gerena through a social media app, ostensibly to buy a half-ounce of marijuana. Appellant and Gerena agreed to meet at a convenience store in Gerena and Idris's neighborhood at around 11:45 p.m.

Appellant called his friend Denzel Wilburn to get a ride to the convenience store. Wilburn agreed to give Appellant a ride after Appellant said that he would get some marijuana for Wilburn's girlfriend. Wilburn then picked up Appellant at Appellant's mother's house.

Appellant. At a trial from December 6 to 13, 2021, the jury found Appellant guilty of all charges. The trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder, concurrent terms of life in prison for armed robbery against Gerena and Idris, 20 years consecutive for the aggravated assault against Idris, and five years consecutive for the firearm conviction; the felony murder counts were vacated by operation of law, and the remaining aggravated assault count merged. Appellant filed a timely motion for new trial. Through new counsel, Appellant elected not to present evidence on the motion and instead submitted a brief in support of the motion on February 19, 2024. On March 19, 2024, the trial court entered an order denying the motion. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the August 2024 term and submitted for decision on the briefs.

Shortly before midnight, Wilburn parked his red 2005 Ford Mustang on Pebblebrook Court, a street off of Arden Drive that ends in a cul-de-sac that backs up to the convenience store property. Appellant got out of Wilburn's car and walked down a path to the area behind the store. At about 12:01 a.m. on July 1, 2019, "Murksumbilly" sent a message to Gerena saying that he had arrived. In another message, "Murksumbilly" said that he was coming from Fred Wells's house, which Idris knew was on Arden Drive.

Gerena and Idris walked behind the store. Gerena had half the marijuana in the pocket of his hoodie, and the other half was in Idris's backpack. Gerena also had a BB gun in his shorts pocket. Appellant approached Gerena and Idris with "money visible in his pocket" and a black and silver handgun with an extended magazine in his waistband.

Gerena handed his half of the marijuana to Appellant to inspect. Appellant inspected the marijuana, asked if that was all of it, and handed the marijuana back to Gerena. Then, instead of

pulling money out of his pocket to pay for the marijuana, Appellant drew his gun from his waistband and pointed it at Gerena and Idris, saying, "Give me all that s**t." Idris immediately handed Appellant his backpack.

Appellant then turned to Gerena. Appellant snatched the marijuana that he had handed back to Gerena from Gerena's hoodie pocket, told Gerena to give up whatever he had, began searching his pockets, and took his BB gun. Gerena physically resisted and told Appellant, "I'm not giving you s**t." Appellant then shot Gerena in the side of the head. Gerena died from the gunshot wound within the hour.

After shooting Gerena, Appellant ran back up the path to Wilburn's car. A neighborhood security camera showed a man running on Pebblebrook Court with something in his hands, and Wilburn noticed that Appellant was carrying a backpack that he did not have when he left to meet Gerena and Idris. Appellant got into Wilburn's car, and Wilburn sped away from the scene. When Wilburn asked Appellant what happened, all Appellant said was

4

that he "got it." Appellant then made a phone call and stayed on the call until they arrived at Appellant's mother's house.

Before getting out of the car at his mother's house, Appellant gave Wilburn two grams of marijuana for Wilburn's girlfriend, and Wilburn drove home. Appellant left Idris's backpack in a wooded area about 100 yards from Appellant's mother's house. At 1:21 a.m., Appellant's phone texted Wilburn to ask if he was "straight," and Wilburn responded that he was. That afternoon, Appellant's younger brother saw him with a handgun with an extended magazine. Appellant later gathered his belongings and fled to Wisconsin.

When responding officers spoke to Idris at the scene of the shooting, he told them that Gerena was shot during a fight with "a random dude" who walked up to Gerena and insulted him. Later that morning, detectives interviewed Idris at the police station. At first, Idris repeated what he said at the crime scene. However, when Idris learned that Gerena was dead, he told them what really happened.

After leaving the police station, Idris asked around on social media for information about the man who shot Gerena. Idris knew the shooter only by his social media name, "Murksumbilly." On the afternoon of July 2, 2019, someone sent Idris a picture of Appellant as "a person who might be Murksumbilly," and Idris recognized Appellant as the man who had pointed a gun at him and shot and killed Gerena.

On July 3, 2019, detectives interviewed Wilburn. The interview was audio and video recorded, and excerpts from the interview were later played for the jury. That same day, a detective went to Idris's house and showed him a six-man photographic lineup. Idris selected the picture of Appellant and said that he was "[l]ike 80 percent sure" that the man in the picture was the person who shot and killed Gerena.

On July 16, 2019, Appellant was spotted in Green Bay, Wisconsin. When law enforcement officers approached, Appellant fled on foot but was ultimately apprehended. On July 19, 2019, law enforcement obtained cell-site location information for Appellant's

6

cell phone showing that it was located in the area of the shooting during the relevant timeframe. On August 2, 2019, Appellant was sent back to Georgia.

In December 2019, Appellant briefly shared a cell with Antonio English, a family friend. Appellant admitted to English that he shot Gerena during a drug transaction but claimed that he did so in self-defense. Appellant also told English where he hid Idris's backpack. Based on information provided by English, an investigator recovered Idris's backpack, which had Gerena's BB gun inside. Until then, the location of these items was unknown to law enforcement.

Idris identified Appellant at trial as the shooter. At an overnight break during the trial, Appellant made a telephone call from jail to one of his brothers. The call was recorded, and an excerpt from the call was played for the jury. In the excerpt, Appellant and his brother were talking about Wilburn when Appellant said, "I would never have even got caught if bro – if bro didn't tell them folks on my ass."

7

2. (a) Appellant contends that the evidence was not sufficient to support his convictions as a matter of constitutional due process. When evaluating the sufficiency of the evidence as a matter of due process, we view the evidence presented at trial in the light most favorable to the verdicts and consider whether it was sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia,* 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). This "limited review leaves to the jury the resolution of conflicts in the evidence, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." *Wilkerson v. State,* 317 Ga. 242, 245 (892 SE2d 737) (2023) (cleaned up).

When properly viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above showed the following. Appellant contacted Gerena through a social media app and arranged to meet him at a convenience store, ostensibly to buy a half-ounce of marijuana. Appellant arrived at the

meeting with a 9mm handgun with an extended magazine tucked in his waistband. After Gerena showed Appellant some of the marijuana, Appellant drew his gun and pointed it at Gerena and Idris. Appellant demanded their possessions, and Idris handed over his backpack containing half the marijuana. Appellant then took the other half of the marijuana from Gerena, along with Gerena's BB gun. When Gerena resisted, Appellant shot him in the side of the head. Gerena died from the gunshot wound within the hour. The evidence presented at trial was sufficient as a matter of constitutional due process to support Appellant's convictions for malice murder, two counts of armed robbery, aggravated assault against Idris, and possession of a firearm during the commission of a crime.

(b) Appellant also contends that the evidence was not sufficient to support his convictions under Georgia statutory law. OCGA § 24-14-6 says that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable

hypothesis save that of the guilt of the accused." But this statute "only applies when the State's case against the defendant was wholly circumstantial." *Torres v. State*, 314 Ga. 838, 841 (878 SE2d 453) (2022) (cleaned up). "If there is any direct evidence presented by the State, the circumstantial evidence statute does not apply." *Troutman v. State*, 320 Ga. 489, 492 (910 SE2d 173) (2024) (cleaned up). Here, the State presented direct evidence of Appellant's guilt in the form of Idris's testimony about Appellant's commission of the crimes and English's testimony that Appellant admitted to shooting Gerena. As a result, OCGA § 24-14-6 does not apply, and Appellant's claim fails.

3. Appellant next claims that the testimony of a single witness is not sufficient to support a conviction where the witness – like Idris here – has changed his statements over time and expressed uncertainty in his observations. Appellant cites no authority for this proposition, which is contrary to Georgia law. OCGA § 24-14-8 expressly states that "[t]he testimony of a single witness is generally sufficient to establish a fact." And it is well

established that in reviewing the sufficiency of the evidence to support a conviction, this Court "leave[s] to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts." *Henderson v. State*, 317 Ga. 66, 72 (891 SE2d 884) (2023) (cleaned up). See also *Handley v. State*, 289 Ga. 786, 786 (716 SE2d 176) (2011) ("[T]he credibility of eyewitness testimony is within the exclusive province of the jury . . . ."). Accordingly, this claim fails.

4. Finally, Appellant argues that Idris's testimony was not sufficient to support his convictions, because Idris was his accomplice in a drug transaction, and Idris's testimony therefore required corroboration under OCGA § 24-14-8. As noted above, OCGA § 24-14-8 says that "[t]he testimony of a single witness is generally sufficient to establish a fact." But the statute goes on to say that "in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient" to establish a fact. OCGA § 24-14-8. Thus, in a felony case, a fact necessary to conviction may not be supported solely by

11

the testimony of an accomplice. See *Johnson v. State*, 288 Ga. 803, 805 (708 SE2d 331) (2011) (construing materially identical predecessor to OCGA § 24-14-8). The accomplice's testimony must be corroborated by the testimony of another witness or by other "corroborating circumstances." Id. (quoting predecessor to OCGA § 24-14-8).[2]

If there is even slight evidence that a witness was the defendant's accomplice in any of the crimes charged, it is up to the jury to decide, under proper instructions, whether the witness was in fact an accomplice such that the witness's testimony must be corroborated under OCGA § 24-14-8. See *Thornton v. State*, 307 Ga. 121, 125 (834 SE2d 814) (2019); *Hamm v. State*, 294 Ga. 791, 794-795 (756 SE2d 507) (2014). However, where a defendant argues that

---

[2] OCGA § 24-14-8 says in full:

The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

a witness was his accomplice only in an uncharged crime, and there is no evidence that the witness was the defendant's accomplice in any of the charged crimes, an accomplice corroboration instruction is unwarranted, and OCGA § 24-14-8 does not require that the witness's testimony be corroborated. See *Taylor v. State*, 306 Ga. 277, 285 & n.22 (830 SE2d 90) (2019) (rejecting murder defendant's argument that a witness's admission that he "drove the victim to the crime scene in order to engage in a drug transaction" made the witness an accomplice and thus entitled the defendant to an accomplice corroboration instruction where the witness's "conduct before, during, and after the incident did not indicate an intent to aid or abet [the defendant] in any of the crimes charged," i.e., "malice murder, felony murder, aggravated assault, armed robbery, possession of a firearm by a convicted felon, and possession of a weapon during the commission of a crime"); *Gee v. State*, 261 Ga. 178, 179 (402 SE2d 719) (1991) (affirming denial of motion for directed verdict based on the predecessor to OCGA § 24-14-8, because the eyewitness "was in no sense an accomplice to the

13

[charged] crimes [of murder, armed robbery, aggravated assault, and robbery]," even though it was "clear that [the eyewitness] was in the taxicab with the defendants because she believed they were going to get the cocaine for which she had previously paid them"). That is the situation here.

Appellant contends that Idris was his accomplice in a drug transaction, pointing to evidence that Gerena and Idris agreed to sell Appellant marijuana and that Idris accompanied Gerena to the convenience store to complete the sale. But even if Idris (the seller) could be considered to be an accomplice to Appellant (the buyer) in a drug crime – which we doubt – Appellant was not charged with any drug crime, nor was a drug crime the predicate for either of the felony murder counts. As for the charged crimes, Idris obviously did not share a common criminal intent with Appellant to commit armed robbery or aggravated assault against himself. See *Stripling v. State*, 304 Ga. 131, 136 (816 SE2d 663) (2018) ("An accomplice is someone who shares a common criminal intent with the actual perpetrator of a crime."). And there was no evidence that Idris

14

shared a common criminal intent with Appellant to murder Gerena, to commit armed robbery or aggravated assault against Gerena, or to possess a firearm during the commission of a crime. See id. Idris was one of Appellant's victims, not his accomplice. Thus, OCGA § 24-14-8 did not require that Idris's testimony be corroborated.

*Judgment affirmed. All the Justices concur.*