NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 30, 2025

S25A0821.  BOSTIC v. THE STATE.
S25A0822.  WRIGHT v. THE STATE.

BETHEL, Justice.

A jury found Jerel Bostic and Timothy Wright guilty of felony murder and other crimes in connection with the shooting death of Jamichael Walker.[1] Following the denial of their motions for new

---

[1] The crimes occurred on March 27, 2019. In August 2021, an Emanuel County grand jury jointly indicted Bostic, Wright, and Da'Korey Somerville for felony murder predicated on attempted armed robbery (Count 1), violation of the Street Gang Terrorism and Prevention Act (Count 2), armed robbery (Count 3), aggravated assault (Count 4), and possession of a firearm during the commission of a felony (Count 5). Bostic, Wright, and Somerville were tried together before a jury in December 2022. The jury found Wright and Somerville guilty of all charges. The jury found Bostic guilty on Counts 1-3, as well as a lesser-included offense on Count 4; Bostic was acquitted on Count 5. Somerville's case is not part of this appeal. The trial court sentenced Wright to serve life in prison without the possibility of parole on Count 1, a concurrent 20-year sentence on Count 2, a concurrent sentence of life in prison on Count 3, and a consecutive 5-year sentence on Count 5. The trial court sentenced Bostic to serve life in prison on Count 1, a concurrent 20-year sentence on Count 2, and a concurrent sentence of life in prison on Count 3. Count 4 was merged.

Bostic and Wright filed timely motions for new trial, which were later

trial, they appeal. Bostic and Wright both challenge the sufficiency of the evidence supporting their convictions. Both appellants also assert that the trial court erred by denying their motions for new trial on the general grounds and that the trial court erred in denying their motions for directed verdicts. Bostic, for his part, also argues that the trial court erred by admitting certain evidence against him and that these errors cumulatively harmed him. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. The crimes took

amended, and a hearing was held on the motions in June 2024. The State conceded that the evidence supporting the appellants' convictions on Count 2, the Street Gang Act violation, was constitutionally insufficient, and the trial court purported to grant a new trial as to that count. But, of course, the court's rationale for reversing those convictions bars retrial. See *Jefferson v. State*, 310 Ga. 725, 726 (2021) ("Although the trial court 'granted' [the appellant's] motion [for new trial] as to the armed robbery convictions, the State is legally barred from retrying [him] on those counts given the court's rationale for its decision. Once a reviewing court reverses a conviction solely for insufficiency of the evidence to sustain the jury's verdict of guilty, double jeopardy bars retrial." (citation and punctuation omitted)). The trial court denied the appellants' motions as to their remaining convictions. Thereafter, on the State's motion, the trial court entered an order of nolle prosequi on Count 2 as to both defendants. Bostic and Wright filed timely notices of appeal, and their cases were docketed to this Court's April 2025 term. Bostic's case, S25A0821, was orally argued on June 12, 2025. Wright's case, S25A0822, was submitted for a decision on the briefs.

2

place outside a local game room at which Walker and, separately, Wright and Da'Korey Somerville were all gambling. Walker was shot multiple times outside the game room's front door, and he died at the scene. After the shooting, Walker's phone was missing from his person. Multiple witnesses observed the shooting from various vantage points, and they testified at trial about what they saw.

Hubert Artis, Walker's cousin, had exited the game room some time before the shooting, going to his car parked outside. As he was leaving the parking lot, Artis saw a fight start outside the game room's front door, though he could not determine how many people were fighting or see who they were. When the fight broke apart, one participant withdrew a pistol and shot another participant. Artis testified that his friend Khalil Davis told him that he saw Bostic "washing hi[m]self off" sometime after the shooting.

Timothy Clark, another cousin of Walker's, was outside the game room at the time of the shooting and testified that he knew Wright and that Wright was the shooter. While he denied seeing Bostic or Somerville, he observed that the guy "tussling" with

3

Walker looked like Bostic. A woman living in a nearby apartment complex heard the shots and saw three men leaving the scene together through the complex, though she could not see who they were.

Walker's acquaintance Ashia Gordon was parked outside the game room with Laportia Johnson shortly before the shooting. While there, Gordon saw Somerville and Bostic talking outside the game room for a couple of minutes. As she and Johnson drove out of the parking lot, Gordon saw a person exit the game room's front door and then saw Walker being pushed against a car as he exclaimed, "Whoa, whoa, whoa, what's going on?" Though Gordon could not see exactly what transpired next, she recalled seeing people shoving each other and then hearing gunshots as she and Johnson drove away. Johnson confirmed that she and Gordon were in a parked vehicle outside the game room, that she saw Walker outside the game room with another person, and that she heard gunshots as they drove away. Johnson denied seeing who any of the participants were in the shooting and testified that she only heard rumors

afterward.

Sometime after the shooting, Jamie Walker, the victim's brother, met up with Johnson, who reported that she saw Bostic fighting Walker outside the game room just before the shooting and pointed Bostic out to Jamie as the person Walker was fighting. In addition, Johnson told Jamie that she saw Wright shoot Walker. According to Jamie, Johnson also told him that she was afraid to report what she had seen to the police for concern that something would happen to her family.

Investigators eventually met with Bostic for an interview and collected a sample of his DNA. DNA collected from beneath Walker's fingernails matched the sample obtained from Bostic. When interviewed by investigators, Bostic offered conflicting accounts of his whereabouts at the time of the shooting. First, Bostic claimed that he left the game room around 9:00 p.m., before the shooting. But when confronted with the evidence of his DNA under Walker's fingernails, Bostic admitted that he was outside the game room at the time of the shooting. He claimed, however, that he was walking

5

around the building toward the front when he heard gunshots ring out and that he started running and ran into Walker, which, he speculated, was how his DNA transferred.

At trial, the State introduced evidence that Bostic, Wright, and Walker were all members of the Bloods street gang, that Walker was cooperating with police in their investigation of a gang-related murder, and that Walker was expected to testify at trial, which was reportedly known on the "streets." The State suggested in its opening and closing arguments that the motive underlying Walker's murder was his cooperation in that investigation. Bostic and Wright both moved for directed verdicts at the close of the State's evidence, which the trial court denied.

Case No. S25A0821

2. In his first claim of error, Bostic challenges the sufficiency of the evidence supporting his convictions, both as a matter of federal constitutional due process and Georgia statutory law. His arguments fail on both fronts.

(a) In reviewing Bostic's challenge to the sufficiency of the

6

evidence as a matter of constitutional due process, we view the evidence in the light most favorable to the jury's verdicts and consider whether any rational trier of fact could have found him guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 US 307, 319 (1979). But "[o]ur limited review under the standard set out in *Jackson* leaves to the jury the resolution of conflicts in the testimony, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made from basic facts to ultimate facts." *Jones v. State*, 312 Ga. 696, 700 (2021) (citation and punctuation omitted). See also *Vega v. State*, 285 Ga. 32, 33 (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

Here, eyewitness testimony established that Bostic was outside the game room with Wright and Somerville around the time of the shooting and that Bostic was fighting with Walker immediately before Walker was shot. In addition, Bostic's DNA was found beneath Walker's fingernails, lending support to testimony

7

that Bostic and Walker were engaged in a physical confrontation. And Bostic gave conflicting accounts about his activities around the time of the crimes. The jury was authorized to find from this evidence that Bostic was guilty, at least as party to the crime, of the crimes for which he was convicted.

Bostic attempts to downplay the eyewitness testimony as mere "rumors" rife with inconsistencies and the DNA evidence as showing nothing more than physical contact. But Bostic's complaints go to the weight and credibility the jury assigned to the evidence against him, "and, as we have explained many times, it is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." *Graham v. State*, 301 Ga. 675, 677 (2017). See also *Williams v. State*, 313 Ga. 325, 328 (2022) ("Although the eyewitness accounts of the shooting did vary to some extent, it was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

Bostic further asserts that the evidence was insufficient to establish that he shared a common criminal intent with his co-defendants, a necessary showing to secure his conviction as a party to the crimes. See *Powell v. State*, 307 Ga. 96, 99 (2019) ("[C]onviction as a party to a crime requires proof that the defendant shared a common criminal intent with the principal perpetrator of the crime, which may be inferred from presence, companionship, and conduct before, during, and after the offense." (cleaned up)). See also OCGA § 16-2-20 (defining parties to a crime). But here, there was evidence from which the jury could infer a shared criminal intent. The evidence showed that Bostic was outside the game room with Wright and Somerville during the crimes, fought with Walker immediately before Wright shot Walker, and then fled the scene with Wright and Somerville. Walker's cell phone, which he was seen using shortly before the shooting, was also missing, indicating that it was taken by the defendants sometime during the confrontation. Viewed in the light most favorable to the verdicts, this evidence was sufficient for the jury to conclude that Bostic shared a common

criminal intent with the direct perpetrators of the crimes. See *Frazier v. State*, 308 Ga. 450, 453–54 (2020) (evidence of appellant's actions before and after crimes, including communicating with the direct perpetrators and lying to investigators, supported finding that appellant was a party to the crimes); *Kim v. State*, 309 Ga. 612, 617 (2020) ("[T]he [factfinder] could reasonably infer that [appellant] lied to the police because he shared a common criminal intent with his associate and that the two acted in concert in committing the crimes."); *State v. Green*, 321 Ga. 204, 214 (2025) ("[J]urors are authorized to consider their disbelief in a defendant's testimony — and the inconsistencies between it and the eyewitness accounts of others — as substantive evidence of his guilt where some corroborative evidence exists for the charged offense." (citation and punctuation omitted)).

(b) Bostic also challenges the sufficiency of the evidence as a matter of Georgia statutory law, arguing that the evidence against him was circumstantial and that the State failed to exclude all reasonable hypotheses other than his guilt. See OCGA 24-14-6 ("To

warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").

> But not every hypothesis is a reasonable one, and the evidence need not exclude every conceivable inference or hypothesis—only those that are reasonable. Whether an alternative hypothesis raised by a defendant is reasonable is a question committed principally to the jury, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law.

*Graves v. State*, 306 Ga. 485, 487 (2019) (citation and punctuation omitted).

Even assuming without deciding that all of the testimony against Bostic was circumstantial, the jury was authorized to reject Bostic's hypothesis that some unrelated third party committed the crimes at issue. Bostic was seen outside the game room with Wright and Somerville during the crimes, fought with Walker immediately before Wright shot Walker, offered inconsistent accounts of his

11

activities around the time of the crime, and gave an implausible explanation for the presence of his DNA under Walker's fingernails. From this evidence, the jury could reject as unreasonable the hypothesis that Bostic was at the scene when Walker was "killed by actors unrelated" to him. See id. at 488. See also *Peacock v. State*, 314 Ga. 709, 714 (2022) (holding that the circumstantial evidence presented at the appellant's trial was sufficient under OCGA § 24-14-6, as it authorized the jury to reject his alternative hypothesis that someone else killed the victims, given his "shifting stories that conflicted with other evidence"). Bostic's challenge to the sufficiency of the evidence therefore fails.

3. Bostic next asserts that the trial court abused its discretion by admitting two witnesses' testimony against him, over his hearsay objections.[2] As we explain below, both arguments fail.

---

[2] Bostic also argues in his appellate brief that the testimony of an investigator regarding certain other hearsay statements, which he concedes was properly admitted, should only be given "de minim[i]s" weight. But it is for the jury to decide the weight of properly admitted evidence. See *Shaw v. State*, 307 Ga. 233, 243 (2019) ("Questions as to weight and credibility are for the jury to decide.").

12

(a) Bostic first challenges the admission of Artis's testimony that Davis reported seeing Bostic "washing hi[m]self off" sometime after the shooting, after Davis testified that he said no such thing. The trial court admitted this evidence as a prior inconsistent statement, and on appeal, Bostic asserts that the State failed to lay a proper foundation for these statements under OCGA § 24-6-613 (b). While Bostic objected to the testimony on hearsay grounds, he did not raise any objection regarding a lack of foundation for admission of the testimony as a prior inconsistent statement. Accordingly, we review only for plain error.

To show plain error, Bostic must show that: "(1) there was an error that [he] did not affirmatively waive; (2) the error was obvious; (3) the error affected [his] substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Smith v. State*, 309 Ga. 240, 250 (2020). "This Court does not have to analyze all elements of the plain-error test where an appellant fails to establish one of them." *Durden v. State*, 318 Ga. 729, 733 (2024) (citation and punctuation omitted).

13

OCGA § 24-6-613 (b) provides:

> [e]xtrinsic evidence of a prior inconsistent statement by a witness shall not be admissible unless the witness is first afforded an opportunity to explain or deny the prior inconsistent statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require.

Bostic asserts that the State's questions to Davis were too vague to afford him a sufficient opportunity to explain his prior statement, as required by OCGA § 24-6-613 (b). But the record does not support Bostic's argument.

On direct examination, Davis denied talking to anyone about Walker's murder and further stated that any person who informed investigators that Davis had information connecting Bostic to Walker's murder was "lying." Davis's flat denial that he ever made any statement about the murder obviated the need for the State to ask Davis whether he made the specific statement at issue here. See *Bridgewater v. State*, 309 Ga. 882, 887 (2020) (holding that a witness's "unambiguous denial that he had ever spoken with [another witness] — as well as his assertion that he did not recall

14

ever speaking with [the second witness] — obviated the need for the prosecutor to ask [the first witness] about specific statements he made to [the second witness] and provided sufficient foundation for the State to present extrinsic evidence of such statements"); *Sconyers v. State*, 318 Ga. 855, 865 (2024) (witnesses' denial of conversation occurring "relieved the prosecutor of the need to ask about specific statements"). Accordingly, there was a sufficient foundation for the admission of Artis's testimony, and Bostic has failed to establish that the trial court erred, much less obviously so, by admitting this testimony.

(b) Bostic also argued in his initial brief that the trial court erred in admitting Johnson's prior inconsistent statements over a hearsay objection because the State failed to establish a proper foundation. Specifically, Bostic alleged that the State failed to explicitly ask Johnson about her statements to Jamie. However, Bostic correctly conceded in his reply brief that the State laid a proper foundation for the admission of these statements, as Johnson denied seeing who shot Walker and claimed she could not remember

15

driving around with Jamie and identifying who had been involved in the shooting. See *Hayes v. State*, 320 Ga. 505, 518 (2024) (witness's failure to recall his prior interview relieved the State from having to ask about specific statements made during that interview); *Sconyers*, 318 Ga. at 864; *Bridgewater*, 309 Ga. at 887. In that same reply brief, Bostic argues for the first time that this Court should overturn unspecified precedent and hold that a prior inconsistent statement made without being sworn or recorded can only be used for impeachment purposes rather than substantive evidence, citing various federal rules of evidence. "But an appellant who raises an argument for the first time in a reply brief is not entitled to have that argument considered." *Bradley v. State*, 318 Ga. 142, 145 n.4 (2024).

4. Bostic next seems to argue that if the trial court had granted the directed verdict on the Street Gang Act count, then he could have secured a mistrial on the remaining counts because all of the State's evidence that had depended on the Street Gang Act count for admissibility would become inadmissible. It is not at all clear to us

whether Bostic has preserved this unusual argument for appeal. But even assuming that he has, Bostic cites no authority for the argument, and we are aware of none. The only specific gang evidence that Bostic points to – the testimony of a GBI agent – was relevant to establishing that the Bloods was a gang, which is an element of the Street Gang Act count. See OCGA §§ 24-4-401 ("'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"), 24-4-402 (providing that "[a]ll relevant evidence" is generally admissible). See also *Butler v. State*, 310 Ga. 892, 898 (2021) (the gang evidence was highly probative and necessary to prove several elements of the Street Gang Act offense, including the existence of the gang). And aside from baldly asserting that the State brought the Street Gang Act count under false pretenses, Bostic fails to establish how, even if the directed verdict had been granted at the time he first made it, the gang evidence would have been excluded under OCGA § 24-4-403 ("Rule 403") ("[r]elevant

17

evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence").

Finally, to the extent Bostic claims that the trial court erred in denying his directed verdict as to the Street Gang Act count, that claim is moot because the court nolle prossed the Street Gang Act count. See *Broxton v. State*, 306 Ga. 127, 136 n.6 (2019). And, as we explained in Division 2, above, there was sufficient evidence to support a conviction with respect to the remaining charges. See *Clements v. State*, 317 Ga. 772, 783 (2023) ("The standard of review for the denial of a motion for directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction."). Accordingly, Bostic's enumeration fails.

5. Bostic next argues that the trial court erred in determining in its order denying his motion for new trial that gang evidence was admissible despite the Street Gang Act count being nolle prossed following the conclusion of the trial. Bostic argues that because the

18

Street Gang Act count failed, he should get a new trial in which the trial court evaluates the relevance of the gang references in conjunction with Rule 403 prior to retrial. However, the cases Bostic points to in support of his argument do not provide authority for his assertion that because the State's prosecution of this count ultimately failed to secure a conviction, he is automatically entitled to a new trial scrubbed of the evidence introduced in support of the failed count.[3] And Bostic fails to point to any other authority holding that where the evidence is found to be insufficient as to one charge, then a new trial must be had on all of the other charges, and we have found none. Accordingly, Bostic's argument fails.

6. Bostic raises two claims of error related to the trial court's denial of his motion for new trial on the "general grounds." See OCGA §§ 5-5-20 (authorizing grant of new trial if the trial judge determines that the jury's verdict is "contrary to evidence and the

---

[3] In *Shaw v. State*, 301 Ga. 14, 19 (2017), we held that the trial court did not abuse its discretion in excluding certain references to gang affiliation during the cross-examination of a witness. And in *Lingo v. State*, 329 Ga. App. 528, 533 (2014), the Court of Appeals held that admission of evidence of the defendant's prior gang affiliation was harmless error.

19

principles of justice and equity"), 5-5-21 (authorizing grant of new trial if the trial judge determines that the jury's verdict is "decidedly and strongly against the weight of the evidence"). First, he asserts that the trial court failed to exercise its discretion in considering the general grounds and instead only applied the *Jackson* sufficiency standard. And second, he asserts that the trial court's denial of his general grounds motion was erroneous on the merits. But Bostic's first argument is unsupported by the record, and the second presents nothing for our review.

When a defendant raises the general grounds in his motion for new trial, "a trial court has broad discretion to sit as the 'thirteenth juror' and consider certain matters beyond the sufficiency of the evidence. These additional matters include conflicts in the evidence, the credibility of witnesses, and the weight of the evidence." *Blackshear v. State*, 309 Ga. 479, 484 (2020) (citations and punctuation omitted). On appeal from the denial of such a motion, this Court reviews "whether the trial court exercised its discretion as the thirteenth juror." *Weems v. State*, 318 Ga. 98, 102–03 (2024).

We have held that "[w]hen the record reflects that the trial court reviewed the motion for new trial *only* for legal sufficiency of the evidence, the trial court has failed to exercise" its discretion under the general grounds. *Holmes v. State*, 306 Ga. 524, 528 (2019) (emphasis supplied). But when the record shows that the trial court in fact exercised its discretion under OCGA §§ 5-5-20 and 5-5-21, "the decision to grant [or deny] a new trial on the general grounds is vested solely in the trial court and is not subject to our review." *Weems*, 318 Ga. at 102–03.

Here, the trial court separately considered Bostic's challenges to the sufficiency of the evidence supporting his convictions as a matter of constitutional due process before turning to Bostic's general grounds claim. The court acknowledged at the outset both the general-grounds standard and its understanding of the discretionary nature of its review under OCGA §§ 5-5-20 and 5-5-21. After noting that it had considered "all the testimony and evidence, and any motive each witness may have to testify to something other than the truth," the trial court concluded that the verdict was "fair,"

21

"supported by sufficient evidence," and "rationally based upon evidence shown to be consistent and therefore reliable." The court further noted that the evidence "did not preponderate heavily against the verdict." On those bases, the court declined to use its "substantial discretion to undo the work of the jury." The record thus reflects that the trial court applied the correct standard to Bostic's general-grounds claim and did not abuse its discretion in that respect. See *King v. State*, 316 Ga. 611, 616 (2023) (rejecting appellant's claim under the general grounds because the trial court expressly "found that 'the weight of the evidence [did] not preponderate heavily against the verdict and the verdict was not contrary to the evidence or the principles of justice and equity'"). Bostic's argument is otherwise not subject to review by this Court. See id.; *Weems*, 318 Ga. at 103.

7. Finally, Bostic argues that the asserted errors are cumulatively prejudicial and warrant reversal. "Reversible cumulative error requires a showing that (1) at least two evidentiary errors … were committed at trial, and that (2) those errors,

22

considered along with the entire record, so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *Smith v. State*, 320 Ga. 825, 839 (2025) (citation and punctuation omitted). However, the cumulative prejudice analysis does not apply where, as here, there are not multiple errors to consider cumulatively. *Thomas v. State*, 311 Ga. 573, 579 (2021). Accordingly, this claim fails.

### Case No. S25A0822

8. Wright first challenges the sufficiency of the evidence supporting his convictions as a matter of constitutional and statutory law. These arguments fail.[4]

(a) Wright argues that there was insufficient evidence under *Jackson* to sustain his felony murder and robbery convictions because there was no evidence that anything was taken from Walker and no one saw him demand anything from Walker at gunpoint. Relatedly, he asserts that the trial court erred by denying his motion

---

[4] Wright also challenges the sufficiency of the evidence supporting the Street Gang Act count, but that conviction was reversed, as detailed in footnote 1, so his argument is moot. See *Dixon v. State*, 309 Ga. 28, 32 n.4 (2020).

for a directed verdict for the same reasons. The standard of review for both arguments is the same: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Shelton v. State*, 313 Ga. 161, 168 (2022) (citation and punctuation omitted). So viewed, the evidence in this case was sufficient to sustain Wright's convictions.

As an initial matter, Wright's complaints pertaining to the lack of physical evidence or additional witness testimony identifying him as a perpetrator are unavailing, as there is no requirement that the State "prove its case with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506 (2017). Moreover, there was evidence from which the jury could have inferred that Wright or one of his co-defendants took Walker's cell phone from him. Specifically, Walker was seen walking out of the game room while talking on his cell phone shortly before the physical confrontation with the co-defendants and the subsequent shooting. Immediately after Walker was accosted and shot, his cell phone was found to be missing from

24

his person. The jury could have concluded from this evidence that Wright or one of his co-defendants took the phone before or after killing Walker, either of which would constitute armed robbery. See *Thornton v. State*, 312 Ga. 224, 227–28 (2021) (evidence was sufficient for the jury to find that the defendant had used a knife to take the victim's cell phone away either before or after killing her, either of which would constitute armed robbery). See also *Fortson v. State*, 313 Ga. 203, 212 (2022) (even though the defendant did not personally shoot victim and take his cell phone, the jury could reasonably conclude from the evidence that the defendant participated in the armed robbery and was therefore party to the crime). Moreover, Wright's complaints about the credibility of Clark's allegedly inconsistent testimony "go to the weight of the evidence against him, which is a question for the jury to decide, not this Court." *Kuhn v. State*, 301 Ga. 741, 743 (2017). Accordingly, Wright's arguments fail.[5]

---

[5] Wright's argument that there was insufficient evidence supporting his conviction of possession of a firearm during the commission of a crime in the absence of Clark's testimony for these same reasons also fails.

Wright also argues that the evidence was insufficient as a matter of Georgia statutory law because Clark's accomplice testimony was not corroborated and was otherwise unbelievable. See OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including ... felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity of the testimony of a second witness."). Wright contends that Clark "essentially functioned as an accomplice-witness" because he admitted to being present and involved in the crimes when he admitted to moving Walker's vehicle. But a review of the record shows that Clark testified that while he was outside the gambling room, he heard Walker tell somebody to move his vehicle. Clark indicated that he initially thought Walker was talking to him but then determined that Walker was addressing someone else. There was no evidence that Clark shared a common criminal intent with the defendants to commit the crimes against Walker. See *Stripling*

26

*v. State*, 304 Ga. 131, 136 (2018) ("An accomplice is someone who shares a common criminal intent with the actual perpetrator of a crime."). Thus, OCGA § 24-14-8 did not require that Clark's testimony be corroborated. See *Dillard v. State*, 321 Ga. 171, 177 (2025).

(b) Wright argues that, as a matter of Georgia statutory law, the State failed to exclude other reasonable hypotheses for the crimes that occurred, such as the possibility that the crimes could have been committed by someone other than Wright, see OCGA § 24-14-16, and that the State failed to show anything beyond Wright's mere presence. See *Willis v. State*, 315 Ga. 19, 24 (2022) ("[A]lthough the defendant's mere presence at the scene is not enough to convict him as a party to the crime, the jury may infer his criminal intent from his presence, companionship, and conduct before, during, and after the offense." (citation and punctuation omitted)). But OCGA § 24-14-16 does not apply where there is direct evidence presented by the State. *Garay v. State*, 314 Ga. 16, 20 (2022). And here, the State presented direct evidence of Wright's

27

involvement and guilt. In particular, eyewitness testimony established that Wright was gambling in the same game room as Walker shortly before the shooting and that Wright engaged in a physical confrontation with Walker outside the game room, and Clark testified that he saw Wright shoot Walker during that confrontation. See *Bradley v. State*, 318 Ga. 142, 144 (2024) ("[E]yewitness testimony … identifying [appellant] as the shooter was direct evidence."). Accordingly, Wright's challenge to the statutory sufficiency of the evidence fails. See *Dillard*, 321 Ga. at 175.

9. Finally, Wright argues that the trial court erred by denying his motion for a new trial on the general grounds, pointing to various evidentiary claims he asserts the trial court failed to fairly consider. But, as we explained in Division 6 above, this claim presents us nothing to review. See *Thompson v. State*, 318 Ga. 760, 765 (2024).

*Judgments affirmed. All the Justices concur.*